PEOPLE v. BRUINSMA

OPINION OF BRONSON, J.

1. ATTORNEY AND CLIENT—NONRESIDENT ATTORNEYS—DUTIES.

   A nonresident attorney not licensed in this state who has been
   granted permission to practice in this state must adhere to
   the same obligations and responsibilities placed upon Michigan-
   licensed attorneys (MCLA §§ 600.916, 600.946).

2. ATTORNEY AND CLIENT—ATTORNEY'S WITHDRAWAL—REQUIREMENTS
   —PROFESSIONAL ETHICS.

   An attorney who represents a client cannot withdraw from the
   case in a manner which leaves his client without notice and
   without an adequate opportunity to seek other representation;
   such conduct violates the canons of professional ethics and the
   law of this state.

3. ATTORNEY AND CLIENT—ATTORNEY'S WITHDRAWAL—REQUIREMENTS
   —MOTION—NOTICE.

   An attorney may not withdraw from his client's case without a
   motion to withdraw or a notice of substitution of counsel.

4. CONTINUANCES—CRIMINAL LAW—RIGHT TO COUNSEL—APPEAL AND
   ERROR—STANDARD OF REVIEW.

   The upholding of a denial of a motion for a continuance, made
   so a criminal defendant could prepare for trial, necessitates
   a finding that not only did the court not abuse its discretion
   but also that the defendant was not denied his constitutional
   right to the effective assistance of counsel (MCLA § 768.2;
   GCR 1963, 503).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 7 Am Jur 2d, Attorneys at Law §§ 8, 10.
[2] 7 Am Jur 2d, Attorneys at Law § 145.
[3] 7 Am Jur 2d, Attorneys at Law §§ 143–145.
[4] 17 Am Jur 2d, Continuance §§ 28, 35.
[5, 6, 10, 13] 17 Am Jur 2d, Continuance §§ 28, 34.
[7–9] 21 Am Jur 2d, Criminal Law § 614.
[11] 16 Am Jur 2d, Constitutional Law §§ 111–114.
[12] 17 Am Jur 2d, Continuance § 2.

5. CONTINUANCES—CRIMINAL LAW—ATTORNEY'S FAILURE TO APPEAR.

A continuance, requested to allow defendant time to prepare for trial, should have been granted where the crime charged carried a 20-year minimum sentence, defendant's out-of-state attorney did not appear for trial, the attorney of counsel, who was present in court, stated that he was not prepared to go to trial and submitted an affidavit on appeal stating that if he had been given time to prepare the result would have been different, the defendant, 21 years old, who represented himself with the assistance of the attorney of counsel, had had no experience in criminal trials, defendant did not learn when his trial was to begin until the day before trial, the continuance denied was defendant's first request for a continuance, the case had not been previously adjourned, and the people's case, consisting of very few witnesses, would not have been prejudiced by a continuance.

6. CONTINUANCES—ATTORNEY'S FAILURE TO APPEAR—COURT'S ACTION —CONTEMPT POWERS.

The proper method for handling a motion for a continuance made by a criminal defendant to allow him time to prepare for trial where the defendant's attorney did not appear for trial and where the defendant did not deliberately attempt to prevent going to trial is to grant the continuance and to use the contempt power against the attorney (MCLA §§ 600.1701, 600.1711).

7. CRIMINAL LAW—SALE OF MARIJUANA—20-YEAR MINIMUM SENTENCE—CRUEL AND UNUSUAL PUNISHMENT—CONSTITUTIONAL LAW.

*A statutory minimum sentence of 20 years for first offenders convicted of the sale of marijuana is unconstitutional as a cruel and unusual punishment (US Const, Am 8; MCLA § 335.152).*

8. CRIMINAL LAW—CRUEL AND UNUSUAL PUNISHMENT—EXCESSIVE SENTENCE—CONSTITUTIONAL LAW.

*A quantitatively excessive sentence may constitute cruel and unusual punishment (US Const, Am 8).*

9. CRIMINAL LAW—SALE OF MARIJUANA—20-YEAR MINIMUM SENTENCE—CRUEL AND UNUSUAL PUNISHMENT—CONSTITUTIONAL LAW.

*The statutory minimum sentence of 20 years for first offenders convicted of the sale of marijuana is unconstitutional as a cruel and unusual punishment because (1) the sentence is higher than those generally imposed for such crimes as second-degree murder, rape, and kidnapping, (2) the statute does not*

*discriminates between the defendant who is a large-scale pusher
of hard narcotics and the defendant who merely gives or sells
one marijuana cigarette to an acquaintance, and (3) the stat-
ute is contrary to the existing philosophy of sentencing by
requiring the sentencing court to ignore the individual defend-
ant, the nature of the offense, and the circumstances surround-
ing the criminal act (US Const, Am 8; MCLA § 335.152).*

CONCURRENCE BY HOLBROOK, P. J.

10. CONTINUANCES—CRIMINAL LAW—ATTORNEY'S FAILURE TO APPEAR.
    *A continuance to allow time to prepare for trial should have been
    granted where defendant's attorney did not appear for the
    trial and the attorney of counsel that did appear admitted
    he was not prepared to proceed.*

11. CONSTITUTIONAL LAW—APPEAL AND ERROR—CONSTITUTIONAL IS-
    SUES—JUDICIAL POLICY.
    *Constitutional questions will be avoided if the case can be decided
    on other grounds; having reversed a case because of an abuse
    of discretion in refusing to grant a continuance, the appellate
    court has no need to decide the constitutionality of a 20-year
    minimum sentence for sale of marijuana.*

DISSENT BY O'HARA, J.

12. CONTINUANCES—PUBLIC POLICY.
    *Granting of a continuance, unless the most compelling circum-
    stances exist, is disfavored in this state (MCLA § 768.2; GCR
    1963, 503).*

13. CONTINUANCES—CRIMINAL LAW—ATTORNEY'S FAILURE TO APPEAR.
    *Denying a motion for a continuance, made to allow defendant
    time to prepare for trial, was not an abuse of discretion even
    though the defendant's attorney did not appear for trial where
    the trial court offered the defendant counsel at public expense
    and the defendant decided to go to trial* in propria persona.

Appeal from Kent, Roman J. Snow, J.  Sub-
mitted Division 3 April 1, 1971, at Grand Rapids.
(Docket No. 9592.)  Decided June 10, 1971.

Dirk Bruinsma was convicted of sale of marijuana.
Defendant appeals.  Reversed and remanded for
new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, *Donald A. Johnston, III,* Chief Appellate Attorney, and *John A. Engman,* Assistant Prosecuting Attorney, for the people.

*Rhoades, McKee & Boer,* for defendant on appeal.

Before: HOLBROOK, P. J., and BRONSON and O'HARA,* JJ.

BRONSON, J. On September 3, 1969, a criminal warrant was issued charging defendant, Dirk Bruinsma, with violation of MCLA § 335.152 (Stat Ann 1957 Rev § 18.1122) in that defendant on March 26, 1969, did unlawfully and feloniously sell, dispense, or otherwise dispose of, to John S. Rosochaki, a narcotic drug, to wit: a quantity of marijuana. The defendant was 21 years old at the time of the alleged crime.

From the record, it appears that defendant retained the services of Mr. Alan Kahn, an attorney from Chicago, Illinois. Although Mr. Kahn did not appear at the arraignment held on September 19, 1969, the prosecutor informed the court that Mr. Kahn had advised the defendant to stand mute. The court, after ascertaining defendant's desire to stand mute, entered a plea of not guilty.

On September 15, 1969, a preliminary examination was held. With Mr. Kahn present, the assistant prosecutor, Mr. Kloote, made the following motion to the court:

*"Judge White:* It is my understanding, Mr. Kloot, that it is agreeable that Mr. Kahn be per-

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

mitted to represent Mr. Bruinsma for these purposes here today.

"*Mr. Kloot:* It is, your Honor.

"*Judge White:* And are you moving the court for his admission here to practice before this court for these purposes today?

"*Mr. Kloote:* I so move, your Honor. Mr. Kahn has indicated to me that he is licensed to practice law in the State of Illinois and I have his address as 7 S. Dearborn in Chicago 60603, and I would move that he be admitted to practice in this court for purposes of this case.

"*Judge White:* Alright, the motion is granted and the record may show for purposes of preliminary examination on motion of the prosecuting attorney that Mr. Alan Kahn, attorney from Chicago, Illinois, be permitted to practice before this court and represent Br. Bruinsma at this time   *   *   *   ."[1]

Following the preliminary examination the magistrate made appropriate findings and orders binding defendant over for trial. On October 13, 1969, a notice regarding pretrial and trial was sent. The notice advised that the pretrial conference would be held on November 20, 1969, and that the jury trial would be set for December 9, 1969.[2] On December 9, 1969, the trial was held and the defendant, Dirk Bruinsma, was present in open court. The record of the trial states that "Mr Bruinsma appeared *in pro per*, his counsel, Mr. Alan C. Kahn (not present) and Mr. Leon Buer of counsel [present]". The verdict of the jury was "guilty as charged". A motion for new trial was timely filed based on the grounds

---

[1] Although Mr. Kahn was admitted upon motion to represent Mr. Bruinsma, we note that no formal appearance listing Mr. Kahn as the attorney of record was filed.

[2] This notice was not sent to the defendant, Dirk Bruinsma, but the proof of service indicates that the notice was sent to Mr. Kahn as well as to a Mr. Buer, a Grand Rapids attorney. Mr. Buer is the attorney who subsequently assisted defendant at the trial.

that the trial court abused its discretion by denying defendant's request for a continuance and that defendant was denied effective assistance of counsel. The motion was denied by the trial court. On May 11, 1970, Dirk Bruinsma was sentenced to a term of 20 to 21 years imprisonment, the 20-year minimum sentence being mandated by the statute. MCLA § 335.152 (Stat Ann 1957 Rev § 18.1122).

## I.

The facts and circumstances relative to the issues on appeal are developed in a pretrial colloquy between defendant, Mr. Buer,[3] and the court. The colloquy took place before the court, outside the presence of the jury, on the morning of the commencement of the trial. The record discloses the following:

"*Mr. Probert [Assistant Prosecutor]*: If the court please, this is case No. 13,308, People of the State of Michigan v. Dirk Bruinsma. Today is the day set for trial of this particular matter. The record should indicate that Mr. Bruinsma was originally represented on September 15, 1969, in the 63rd District Court before Judge White by Mr. Alan Kahn, an attorney from Chicago, Illinois. At that time Mr. Kahn indicated that he represented Mr. Bruinsma. When Mr. Bruinsma was arraigned before the circuit court on September 19, 1969, he appeared by himself without benefit of counsel. However, the record indicates at that point that he was still represented by Mr. Kahn of Chicago and that Mr. Kahn

---

[3] As will be seen from the quoted portions of the colloquy, it was not the intention or belief of defendant or Mr. Buer that the usual attorney-client relationship existed between them. Apparently, Mr. Kahn had contacted Mr. Buer for the purpose of having the local attorney as "of counsel". Mr. Buer was not involved in the defense of the case insofar as he had not familiarized himself with the facts, investigated the case, nor prepared himself for a defense thereof.

was going to contact Mr. Leon Buer who would be of counsel in this particular matter.

"Mr. Buer is herewith present before the court today, as is Mr. Bruinsma. In a conversation outside the hearing of the court, Mr. Bruinsma has indicated that Mr. Kahn will not be here today to represent him.

"*The Court:* Let Mr. Bruinsma speak for himself.

"*Dirk Bruinsma:* It was like I would like to ask for a motion for continuance.

"*The Court:* Do you want to tell me why your attorney isn't here?

"*Dirk Bruinsma:* Why he isn't here? I wasn't communicating with him enough, I don't think, which is probably my fault, and I was under the impression that today was a pretrial when it was actually the trial, and that is why he isn't here today, because I was supposed to have him the balance of the fee prior to my trial date, and when I assumed this was a pretrial I didn't have that in to him, and consequently he didn't make it today.

"*The Court:* You knew the pretrial had already been held?

"*Dirk Bruinsma:* Well, no, I didn't. I didn't know that was the pretrial that was held. I just didn't.

"*The Court:* What does the record indicate the date his attorney got notice of the trial?

"*Mr. Probert:* The record indicates notice was sent by Mr. Dykema October 13, 1969, indicating that the pretrial conference for that particular case was to be heard November 20, 1969, at 3:15 p.m., and the matter was set for trial before a jury on December 9, at 9:30 a.m.

"*The Court:* Did you talk to your attorney by telephone last night, Dirk?

"*Dirk Bruinsma:* Right.

"*The Court:* What was the substance of that conversation?

"*Dirk Bruinsma:* Well, then last night is when I came to realize I was going for trial today, and Mr. Kahn was unable to make it today then.

"*The Court:* You called him, didn't you?

"*Dirk Bruinsma:* Right. Well, first—

"*The Court:* Why did you call him?

"*Dirk Bruinsma:* First I called Mr. Buer to find out if my pretrial was at 9:30, and then I found out it was a jury trial, so I immediately called Mr. Kahn and asked him if this was correct or if it was just a misunderstanding, and he said, 'No, it was my trial today', and then he said, 'No, he wouldn't be able to make it'.

"*The Court:* How long have you retained Mr. Kahn?

"*Dirk Bruinsma:* Since about, I think it is about a week prior to my preliminary hearing. I don't recall the date of the hearing.

"*The Court:* What is the date of the preliminary hearing?

"*Mr. Probert:* September 15.

"*Dirk Bruinsma:* So it would have been somewhere between the 10th and 15th I would have retained him.

"*The Court:* Have you been in touch with him since that time?

"*Dirk Bruinsma:* Yes, I have spoken to him since the preliminary, also.

"*The Court:* There is absolutely no reason why you should not know that your trial was set for today.

"*Dirk Bruinsma:* I agree that it is probably—

"*The Court:* You also knew that Mr. Buer was appearing of counsel, did you not?

"*Dirk Bruinsma:* Well, he was—I asked Mr. Buer to appear because I think Mr. Kahn said—I don't recall exactly what was said at the preliminary hearing then because he was from out of the state of Michigan, a Michigan attorney was needed to

sit in, or I don't really know what exactly the words were.

"*The Court:* Do you recall what you said at the preliminary examination?

"*Dirk Bruinsma:* To Mr. Kahn? Or in relation to what?

"*Mr. Probert:* At the arraignment?

"*The Court:* Was it at the arraignment or at the preliminary examination?

"*Mr. Probert:* There was one statement at the arraignment before the court.

"*Dirk Bruinsma:* At the arraignment they asked me if I had counsel, and I said, 'Yes, I had Mr. Kahn'.

"*Mr. Probert:* He was asked, 'Is your attorney Mr. Kahn' by Judge VanderWal, I believe. And he said, 'Right. Also Mr. Buer. He has to get an attorney from this state.' '*Question:* Leon Buer, is that his name?' '*Answer:* Right. I am not sure if that is the one he contacted or not.' '*Question:* You are instructed to stand mute, and you want a trial, is that it?' '*Answer:* Yes.'

"*The Court:* So you, in your conversation with Mr. Kahn at that time you knew he was going to contact Mr. Leon Buer?

"*Dirk Bruinsma:* Well, he didn't know, really, who to work with here, to get for the Michigan attorney, so I told him there was Mr. Buer, and I think I told him there was Mr. Geil from Muskegon, and then I just, I spoke to Mr. Buer after that, and then I think—

"*The Court:* You knew subsequent to that that Mr. Buer had been retained as of counsel in your case?

"*Dirk Bruinsma:* Well, I haven't given him any money yet, so I don't know if that means he is retained.

"*The Court:* That doesn't answer my question. You knew he had been retained as of counsel?

"*Dirk Bruinsma:* Well, I had spoken to him, and he said—

"*The Court:* Can you answer that question?

"*Dirk Bruinsma:* I don't think I really understand the context of it.

"*The Court:* You knew [Mr. Buer] was going to appear of counsel in this case?

"*Dirk Bruinsma:* Not as my representative, but only as a person sitting in meeting the requirements of having to have a Michigan attorney sit in.

"*The Court: All right. We are prepared to go to trial this morning, and you have an attorney representing you, Mr. Bruinsma, and we are prepared to proceed at this point.*" (Emphasis added.)

Following this colloquy and the court's decision to proceed to trial, defendant Bruinsma requested permission to represent himself with "Mr. Buer to give me a little help now and then, if he would like to". The trial court granted defendant's request,[4] whereupon Mr. Buer made the following statement to the court:

"*Mr. Buer:* May the record show, your Honor, that I will do everything that I can in this position. It was probably what I was employed for in the first place, *only I hate to see Mr. Bruinsma representing himself, but he says he is familiar with the case. I certainly am not,* so perhaps we can do the job. We will try."[5] (Emphasis added.)

Before we discuss the merits of defendant's allegations of error, we cannot, confronted with the record before us, ignore the conduct exhibited in the instant case by Mr. Kahn, the attorney from Chicago. This

---

[4] Although the trial judge, before granting defendant's request to appear *in propria persona,* informed the defendant that he had a right to representation by an attorney, in our opinion the substance of the quoted colloquy vitiated this offer.

[5] The trial court then adjourned the case for a brief period in order to permit Mr. Buer time to read the preliminary transcript.

Court would be remiss in its duty if we permitted the instant situation to pass unnoticed.

Mr. Kahn is not an attorney licensed to practice law in this state. Nevertheless, the Legislature and the Supreme Court of this state have seen fit to permit attorneys duly licensed in other states to appear and represent clients before Michigan courts under appropriate situations. See MCLA § 600.946 (Stat Ann 1971 Cum Supp § 27A.946); MCLA § 600.916 (Stat Ann 1962 Rev § 27A.916); *Johnson* v. *DiGiovanni* (1956), 347 Mich 118. We have no objection to this courtesy extended to out-of-state attorneys, but we must insist upon the recognition of the concomitant duties and their performance. It is an untenable position to argue that nonresident attorneys who are extended the courtesy to practice in this state need not adhere to the same obligations and responsibilities we place upon licensed Michigan attorneys.

An attorney who represents a client cannot withdraw from a case in a manner which leaves his client without notice and without an adequate opportunity to seek other representation. Such conduct violates the canons of professional ethics[6] and the established case law of this state.[7] To protect against this situation, courts of this state require a motion to withdraw or a notice of substitution of counsel.[8]

---

[6] ABA Canon 44. Attorneys are obligated to adhere to the canons of professional ethics. See *Auseon* v. *Reading Brass Co.* (1970), 22 Mich App 505.

[7] See *Wykoff* v. *Winisky* (1968), 9 Mich App 662; *In re McHuh* (1908), 152 Mich 505; *Coon* v. *The Plymouth Plank Road Co.* (1875), 32 Mich 248.

[8] While the procedure established by the court's local rules may vary somewhat, the Court's statement in *Coon* v. *The Plymouth Plank Road Co.,* fn 7, *supra,* at p 250, sets forth the basic principle:

"[The attorney's] refusal to proceed in a particular case is not ceasing to 'act as such' attorney or solicitor; it does not even disconnect him with the case; for that can only be accomplished by

In the instant case, Mr. Kahn did not file a motion to withdraw, nor, as far as the record reveals, was sufficient notice given to defendant that Mr. Kahn. would not appear for trial. Instead, Mr. Kahn, for whatever reasons, chose not to appear on the date scheduled for trial.[9] Such conduct obstructs the orderly process of criminal procedure. Absent some valid justification, this conduct is indefensible. We shall forthwith refer the conduct of counsel to the Michigan State Bar Association.

We now turn to the merits of defendant's appeal. The granting or denial of a continuance is governed by court rule, GCR 1963, 503, and statute, MCLA § 768.2 (Stat Ann 1954 Rev § 28.1025). The ruling of the trial court is discretionary and will not be disturbed unless an abuse occurred in the exercise thereof.

Since the instant case involves a criminal proceeding, this Court not only must be satisfied that no abuse of discretion occurred by denying defendant's request for a continuance, but we must consider whether defendant, under the facts presented, was denied his constitutional right to the effective assistance of counsel. US Const, Am 6; Const 1963, art 1, § 20. Each case in which such issues are raised will necessarily be controlled by the facts presented.

In the instant case we have a young man, 21 years old, charged with the crime which requires a minimum of 20 years' imprisonment upon conviction. On the record before us, it does not appear that defendant had any prior experience in criminal

consent of the parties, or of the court, or by regular proceedings for the substitution of another."

[9] The Court in *McHuh*, fn 7, *supra*, at p 509, stated the following with respect to an attorney's duty:

"Attorneys are officers of the court, and it is their duty to be in court upon the trial of causes duly set for trial of which they have had due notice."

trials. Defendant testified that he was unaware that his trial was to commence on December 9 until he contacted Mr. Buer on December 8, the day before the scheduled trial. Defendant further testified that he had not previously discussed the case with Mr. Buer because defendant simply believed that Mr. Buer's presence was a formality required when an out-of-state counsel conducted trials in this state. If Mr. Bruinsma's testimony is believed, his action in requesting a continuance was made as soon as possible.[10] At any rate, this was defendant's first request for a continuance, and the case had not been previously adjourned.

Mr. Buer not only informed the trial judge in open court that he was not prepared to proceed to trial, but has also filed an affidavit with this Court stating that had he been provided a sufficient opportunity to prepare and familiarize himself with defendant's case, the outcome may well have been different.[11] The witnesses subpoenaed on behalf of the prosecution were few, and nothing appears on the record to indicate that the people's case would have been prejudiced by a continuance.[12]

---

[10] It may be argued that a defendant who suggests that he was unaware of his trial date must be suspect. We do not necessarily disagree. However, the right to effective assistance of counsel, as well as to a fair trial, is too vital to be lost on the strength of mere suspicions. Therefore, we are inclined to give adequate weight to defendant's testimony. See *Roberts* v. *Commonwealth* (Ky, 1960), 339 SW2d 640, 643.

[11] After reading the transcript we are convinced that Mr. Buer must be complimented for his efforts on behalf of the defendant. However, the lack of preparation, investigation, and familiarization in a case of this nature precludes the presentation of a proper defense.

[12] In *People* v. *Anderson* (1884), 53 Mich 60, 62, the Court stated the following:

"It does not strike us that the convenience of a prosecuting witness should govern in crowding a respondent to a speedy trial without preparation. And where, upon the face of the record, it is manifest, as it is here, that defendant has actually had no time for preparation, we cannot but doubt whether some further time should not have been given to obtain testimony."

Considering all the facts presented, and particularly noting the severity of the sentence to be imposed upon a finding of guilt, as well as Mr. Buer's candid admission to the court that he was not prepared to proceed, we are constrained to hold that the trial court's denial of a continuance constituted an unsound exercise of discretion[13] and denied defendant the fundamental right to effective assistance of counsel.[14]

We do not mean to imply by our decision herein that a trial judge may not, under appropriate circumstances, proceed to trial. We do suggest, however, that in circumstances similar to those presented in the instant case where the record does not support the conclusion that defendant deliberately attempted to keep from going to trial, the decision not to allow a continuance because of the unsettling effect it would have on the court calendar is necessarily circumscribed by the basic constitutional right to the effective assistance of counsel.

A trial judge presented with a similar situation is not without remedy. The remedy is, in our opinion, sufficient to protect against potential abuses. That is, rather than denying defendant's motion for a continuance, the court may take such action against derelict counsel as may be appropriate. See MCLA § 600.1701 (Stat Ann 1962 Rev § 27A-.1701); MCLA § 600.1711 (Stat Ann 1962 Rev 27A.1711).

---

[13] See *Merritt v. State* (Del, 1966), 219 A2d 258; *Brooks v. State* (Fla, 1965), 176 So 2d 116; *Smith v. State* (1959), 215 Ga 362 (110 SE2d 635); *Jackson v. State* (1892), 88 Ga 784 (15 SE 677); *Claxon v. Commonwealth* (Ky, 1895), 30 SW 998; *City of Minneapolis v. Price* (1968), 280 Minn 429 (159 NW2d 776). See, generally, Anno., 66 ALR2d 298.

[14] See *Roberts v. Dutton* (CA5, 1966), 368 F2d 465; *Brooks v. State* (Fla, 1965), 176 So 2d 116; *Rice v. State* (1942), 220 Ind 523 (44 NE2d 829). See, also, *United States v. Johnston* (CA6, 1963), 318 F2d 288.

The Michigan Supreme Court recently addressed itself to this problem in *People* v. *Matish* (1971), 384 Mich 568, 572, wherein the Court quoted with approval from *Arthur* v. *The Superior Court of Los Angeles County* (1965), 62 Cal 2d 404 (42 Cal Rptr 441, 398 P2d 777):

*"When an attorney fails to appear in court with his client, particularly in a criminal matter, the wheels of justice must temporarily grind to a halt. The client cannot be penalized, nor can the court proceed in the absence of counsel.* Having allocated time for this case, the court is seldom able to substitute other matters. Thus, the entire administration of justice falters. *Without judicious use of contempt power, courts will have little authority over indifferent attorneys who disrupt the judicial process through failure to appear."* (Emphasis added.)

## II.

But even if this conviction did not require reversal for the reasons previously stated, I do not believe that the statutory requirement that a 20-year minimum sentence be imposed in this case can pass constitutional muster.

Ordinarily judicial restraint would dictate that this opinion not address itself to the question of the constitutionality of the statute. But two reasons exist for consideration of this issue. First, although two panels from this Court have upheld the constitutionality of the penalty imposed under this statute,[15] both cases are presently before the Michigan Supreme Court.[16] To the extent that the judges of

---

[15] *People* v. *Rios* (1970), 27 Mich App 54; *People* v. *Albert White* (1970), 27 Mich App 432.

[16] *People* v. *Rios* (1970), 384 Mich 789 (Docket No. 53,084); *People* v. *Albert White* (ordered held pending *Lorentzen,* March 5, 1971) (Docket No. 53,209). See, also, *People* v. *Lorentzen* (1971), 384 Mich 806 (Docket No. 53,200).

this Court are not in complete agreement on this issue, the writer of this opinion feels duty bound to make known his views. Secondly, I take judicial notice of the fact that defendant, if retried and convicted under the statute, would still face a mandatory minimum sentence of 20 years imprisonment.

The Eighth Amendment of the United States Constitution, as well as art 1, § 16 of the Michigan Constitution, forbids the infliction of cruel and unusual punishments. Normally the Eighth Amendment is regarded as a bar only to barbarous *methods* of punishment—whipping, torture, and the like. *Powell* v. *Texas* (1968), 392 US 514 (88 S Ct 2145, 20 L Ed 2d 1254); *Louisiana, ex rel. Francis,* v. *Resweber* (1947), 329 US 459 (67 S Ct 374, 91 L Ed 422); *Jackson* v. *Bishop* (CA 8, 1968), 404 F2d 571; Comment, 77 Harv L Rev 1071 (1964); Note, 79 Harv L Rev 635 (1966).

There is, however, authority for the proposition that quantitatively excessive sentences may constitute cruel and unusual punishment.[17] Justice Douglas, concurring in *Robinson* v. *California* (1962), 370 US 660, 676 (82 S Ct 1417, 1425; 8 L Ed 2d 758, 768), stated:

"The question presented in the earlier cases concerned the degree of severity with which a particular offense was punished or the element of cruelty present. *A punishment out of all proportion to the offense may bring it within the ban against 'cruel and unusual punishment.'* See *O'Neill* v. *Vermont*, 144 US 323, 331 (12 S Ct 693, 696; 36 L Ed 450, 455)." (Emphasis added.)

---

[17] See *Ralph* v. *Warden, Maryland Penitentiary* (CA4, 1970), 438 F2d 786; *Jackson* v. *Bishop* (CA8, 1968), 404 F2d 571, 577–579; *Sostre* v. *Rockefeller* (SD NY, 1969), 309 F Supp 611, 613, 614; *Willoughby* v. *Phend* (ND Ind 1969), 301 F Supp 644, 646, 647. See, also, *State* v. *Evans* (1952), 73 Idaho 50 (245 P2d 788, 792); *Workman* v. *Commonwealth* (Ky, 1968), 429 SW2d 374; *Cannon* v. *Gladden* (1955), 203 Or 629 (281 P2d 233).

In *Weems* v. *United States* (1910), 217 US 349 (30 S Ct 544, 54 L Ed 793), a Phillipine official was sentenced to 12 years at aggravated hard labor for falsifying public records. Citing the relatively light sentences for this offense in other American jurisdictions, the Court held that this punishment violated the Eighth Amendment. Subsequently, in *Trop* v. *Dulles* (1958), 356 US 86 (78 S Ct 590, 2 L Ed 2d 630), Chief Justice Warren observed that

"The basic concept underlying the Eighth Amendment is nothing less than the dignity of man * * * . *The Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.*" (Emphasis added.)

I am satisfied that a mandatory minimum sentence of 20 years for the sale of *marijuana*, regardless of quantity, is, in light of the "evolving standards of decency", a cruel and unusual punishment for first offenders.

Clearly, it is unusual for anyone to stand trial on the charged offense of sale of *marijuana*. The mandatory minimum 20-year sentence is so completely out of proportion to the wrong done society that it has become the almost universal practice to offer—indeed to urge—offenders charged with the sale of marijuana to plead guilty to some lesser offense so that the mandatory minimum sentence need not be imposed with the result that it is "unusual" for anyone, even the most hardened offenders, to be sentenced for such a long term; most are sentenced to relatively short terms and many are put on probation.[18]

---

[18] See Robert Dawson, *Sentencing: The Decision as to Type, Length, and Conditions of Sentence,* chs 6, 7 (Little, Brown & Co., 1969); Michigan Revised Criminal Code § 6015, Committee Commentary (Final Draft 1967). See, generally, 1968 and 1969 "Criminal Statistics", State of Michigan, Department of Corrections.

When the 20-year minimum sentence for the sale of narcotics was established the Legislature did not differentiate between the sale of hard narcotics, *e.g.*, heroin, and the sale of marijuana.[19]  Since the establishment of the 20-year minimum sentence, scientific investigations have put in question the validity of the assumptions that marijuana, like heroin, is habit forming and that marijuana like heroin, is harmful or, if harmful, anywhere nearly as harmful as the use of heroin and other hard drugs.  While all the returns are not in, it does seem clear that there is a significant difference between selling marijuana and selling heroin.[20]

Although I do not think that it is sound legislative policy to prescribe a minimum sentence and thereby to eliminate altogether judicial and parole board discretion, I would not be prepared to say that a minimum sentence for the sale of hard narcotics is cruel and unusual in light of evolving standards of decency.  But, in light of new knowledge acquired regarding the effects of the use of marijuana, and in light of the widespread use of marijuana by otherwise law-abiding citizens, it is manifestly cruel and unusual to impose a minimum 20-year sentence

[19] Michigan Revised Criminal Code § 6015, Committee Commentary (Final Draft 1967).  See Richard J. Bonnie and Charles H. Whitebread, "The Forbidden Fruit and the Tree of Knowledge:  An Inquiry into the Legal History of American Marijuana Prohibition", 56 Va L Rev 971 (1970).  See, generally, John Kaplan, *Marijuana—The New Prohibition* (World Publishing, 1970).

[20] The difference has been recognized by the United States Congress which recently enacted a new drug law, the Comprehensive Drug Abuse Prevention and Control Act.  Public Law 91, 91st Congress HR 18583 October, 1970 (reported in 8 Crim L Rptr 3015).  Section 401(b) of the act provides that punishment for sale of marijuana for a first offense shall not be more than five years.  Under the same section, the first conviction of the sale of a *narcotic drug* under schedule I and II of the act is punishable by a *maximum* sentence of 15 years imprisonment.  Marijuana is *not* classified as a "narcotic drug".  The term "narcotic drug" includes opium, coca leaves, and opiates.  § 102(16).

for the sale of marijuana, a sentence which is considerably higher than that generally imposed for such serious offenses as second-degree murder, robbery armed, rape, and kidnapping.[21]

Not only do I believe that the statute is unconstitutional for the reasons pointed out, but it is also wrong in theory and dangerous in practice. The irreparable harm caused by the prolonged sentence cannot be overemphasized. The present statute results in a lamentable failure to discriminate between large-scale pushers of hard narcotics and the individual who merely sells or gives a marijuana cigarette to an acquaintance. See Michigan Revised Criminal Code § 6015, Committee Commentary (Final Draft, 1967).

The present statute, by requiring a minimum sentence of 20 years, is at odds with the existing philosophy for sentencing convicted offenders under our criminal laws. With the exceptions of mandatory life imprisonment for convictions of first-degree murder and treason, no other criminal statute requires such a severe minimum sentence. In fact,

---

[21] In 1969, of the 231 offenders convicted of armed robbery, only 19 were sentenced to terms of 20 years or longer, 33 were sentenced to a minimum term of 15 years, 26 to a minimum term of 12 years, and the rest to minimum terms of 8 years or less.

Of the 78 offenders sentenced to prison for second-degree murder, only 29 were sentenced to a minimum term of 20 years or more, 17 to a minimum term of 15 years, 7 to a minimum term of 12 years, and the rest to minimum terms of 10 years or less.

Of the 51 men sentenced to prison for rape, only 2 were sentenced to a life term, none were sentenced to a term of years as long as 20 years, 9 were sentenced to a term of 15 years, and 5 to a term of 12 years, and the rest to terms of 8 years or less.

Of the 11 offenders sentenced to prison for kidnapping, one was sentenced to a minimum term of 11 years, 2 to a minimum term of 15 years, 2 to a minimum term of 12 years, and the rest to minimum terms of 5 years or less.

Additionally, 80 offenders convicted of armed robbery were placed on probation, 38 convicted of rape were placed on probation, 9 convicted of second-degree murder were placed on probation, and one convicted of kidnapping was placed on probation.

Data from 1969 Criminal Statistics, State of Michigan, Department of Corrections.

the remaining criminal statutes are predicated upon a theory designed to permit the sentencing court to consider the individual before him, the nature of the offense, and the circumstances surrounding the criminal conduct. While the sentencing scheme usually provides a statutory maximum for the most egregious offenses, it assigns to the sentencing judge the task of determining what lesser sanctions, if any, will serve the interest of society without unjustly penalizing the offender.

MCLA § 335.152 (Stat Ann 1957 Rev § 18.1122) requires the sentencing court to ignore the individual offender before it and to impose, as a minimum, a 20-year prison term. The imposition of a statutory minimum, which precludes the offender from receiving the benefit of any special equity or mitigating circumstances which might otherwise result in a less severe sentence, is itself a sign of unusual severity. The sentencing judge in the instant case made known for the record his opinion of this requirement:

"I want to make it known that I am not in favor of this minimum sentence of 20 years, and I will write a letter to the corrections commission to see that you are released at the earliest possible time insofar as the law permits, giving you all the credit for 'good time' if you do behave yourself at the institution."

What is the relevance, rightness, or responsiveness of the statutory requirement that an offender, who sells, dispenses, or otherwise disposes of *any quantity of marijuana,* be sentenced to a *minimum of 20 years' imprisonment,* regardless of the circumstances? Such a situation is not only incompatible with all other criminal statutes, but is totally

inconsistent with any recognized legitimate aims of modern criminal jurisprudence.

We cannot and should not remain either silent or passive to this statutory injustice. To remain silent would destroy both the faith and confidence of many of our citizens in their justifiable belief that our laws should be based in part on a foundation of relevance, rightness, and responsiveness.

Reversed and remanded.

Holbrook, P. J. (*concurring in remanding for a new trial*). The writer of this opinion is constrained to concur in the ordering of a remand for the purpose of granting a new trial to the defendant in this case. The defendant's attorney, Mr. Kahn, of Chicago, Illinois, was not a practicing attorney in Michigan. It was necessary for Mr. Kahn to have Michigan counsel to be able to represent the defendant at the trial. Mr. Kahn was present and represented defendant at the preliminary examination. Evidently because he wasn't paid additional money, he didn't show up on the date of trial. Mr. Buer, a Michigan attorney, as an act of courtesy, was going to move for Mr. Kahn's admission to the court to try the case, and sit in with him as of counsel for the defendant. Mr. Buer did not, nor was he hired to represent the defendant at the trial. He was not acquainted with the case other than his part to be with Mr. Kahn at the trial. Although the defendant consented to represent himself with possible aid from Mr. Buer, it is obvious from the affidavit of Mr. Buer, made after the trial, that the defendant was, under the circumstances, denied effective assistance of counsel. The affidavit is as follows:

"Leon B. Buer, being duly sworn, deposes and says that on the morning of the trial of Dirk Bruins-

ma, without any preparation and without previously
acquainting himself with the factual situation in-
volved and upon request, he did, without being paid,
act to advise the said Dirk Bruinsma in the conduct
of the trial before the court and jury on a charge of
sale of marijuana. That in order to acquaint him-
self with the facts, deponent hereto quickly read
over the preliminary examination and then assisted
the respondent in the voir dire examination of the
jury.

"Deponent further states that it wasn't until
sometime later that he took an active role in the
trial and cross-examined the prosecution's main wit-
ness. Deponent hereto states that had he had time
and a thorough-going acquaintance with the facts
he could have represented the said Dirk Bruinsma
in a more decisive fashion.

"Deponent further states that it is his opinion
that time and preparation of the case might have
uncovered facts leading to the impeachment of the
prosecution's key witness whereby the result of the
trial would have been different."

Now it is true that the courts of our state are
heavily burdened and that it is imperative that cases
move forward without undue delay. In order to do
this, courts must at times make decisions to go
forward when it might prove later to have been
more advisable to postpone the trial. This case ap-
pears to this writer to fall into the latter category.
It now appears that the trial judge should have
granted the motion of the defendant for a contin-
uance so that Mr. Buer could properly prepare for
trial.

This ruling is made without criticism of anyone
in the case except Mr. Kahn who should have been,
and would have been, present at the trial represent-
ing defendant had he been a Michigan attorney.
This writer declines to rule on the constitutionality

of the criminal statute in question for the reason that constitutional questions are avoided if the case can be decided on other grounds. 16 Am Jur 2d, Constitutional Law, § 113, p 301; *Smith* v. *Curran* (1934), 267 Mich 413.

O'HARA, J. (*for affirmance*). After trial by jury, the defendant was found guilty of having unlawfully sold a narcotic drug, marijuana, without a license. MCLA § 335.152 (Stat Ann 1957 Rev § 18.1122). He appeals of right.

At his preliminary examination on September 15, 1969, defendant was represented by Alan Kahn, a member of the Illinois bar admitted to practice in Michigan for the purpose of this case. Based upon the evidence there adduced, the defendant was bound over to circuit court for trial.

On September 19, 1969, his arraignment was held in the Circuit Court for the County of Kent. Pursuant to the advice of his counsel, the defendant stood mute. A plea of not guilty was entered by order of the court. Mr. Kahn was not present in person on this occasion.

On October 13, 1969, a notice of the pretrial conference, set for November 20, and of the trial, set for December 9 at 9:30 a.m., had been sent to both Mr. Kahn, defendant's counsel, and to Mr. Leon Buer, a member of the Michigan bar, as of counsel for defendant.

At the time set for trial, all of the participants were in attendance except Mr. Kahn.

Out of the presence of the jury and prior to commencement of the trial, defendant asked the court for a continuance because of the unavailability of his out-of-state counsel.

There followed a colloquy between the trial judge and the defendant concerning the reason for Mr.

Kahn's absence. In substance, the defendant contended that he had been under the impression that the proceedings that day were to be in the nature of a pretrial conference up until his telephone conversation with his Illinois attorney the night before. Mr. Kahn had stated that he was aware the case was set for trial the next day. Defendant then indicated that Mr. Kahn's absence was due to defendant's failure to pay Mr. Kahn's required fee. The trial judge then said the case was ready for trial, that it was to go forward, and if the accused could not engage counsel the court would appoint one for him at public expense. The judge then addressed himself to the purpose for which the Michigan attorney had been engaged, and the reason for his presence in court. Defendant indicated that Mr. Buer was only to fulfill the requirement of resident counsel. The Michigan attorney advised the court that he was not familiar with the case as he had not expected to try it.

The defendant then asked if he could proceed in proper person with whatever assistance Mr. Buer could give him. We quote:

*"Defendant:* Could I ask the court's permission to represent myself and just ask Mr. Buer to give me a little help now and then if he would like to?

*"The Court:* Is that what you want to do?

*"Defendant:* Yes, I would like to do that because I feel I know the case and I, you know, I would like—

*"The Court:* You understand you have a right to an attorney?

*"Defendant:* Yes.

*"The Court:* And if you do not have enough money to hire an attorney, the court will appoint one for you without charge to you?

*"Defendant:* Uh huh.

"*The Court:* Knowing and understanding that, do you want to proceed on your own?

"*Defendant:* Uh huh.

"*The Court:* And just have Mr. Buer sit in and help you?

"*Defendant:* Yes.

"*The Court:* All right. We will proceed.

"*Mr. Buer:* May the record show, your Honor, that I will do everything that I can in this position. It was probably what I was employed for in the first place, only I hate to see Mr. Bruinsma representing himself, but he says he is familiar with the case. I certainly am not, so perhaps we can do the job. We will try.

"*Defendant:* Is there another copy of the transcript available?

"*The Court:* We will make one available to you. We will be in recess while a copy is made.

"*Mr. Probert [assistant prosecutor]:* Before the court takes a recess, I have discussed with Mr. Bruinsma and Mr. Buer one stipulation about the question of whether or not Mr. Bruinsma was licensed under the state law by the Department of Licensing Regulations [*sic*] to administer, prescribe, or dispense or sell narcotic drugs, and Mr. Buer has indicated that he would be willing to stipulate that Mr. Bruinsma was not so licensed, and I believe Mr. Bruinsma—

"*Defendant:* I can stipulate that myself.

"*The Court:* You are telling the court you are not so licensed?

"*Defendant:* I don't have a license to sell any drugs, no.

"*The Court:* Allright.

"*Mr. Probert:* Thank you, your Honor."

The only issue raised on appeal is whether the trial court abused its discretion in denying defendant's first motion for a continuance on the day of trial because of the absence of his out-of-state

counsel for the reasons and circumstances revealed by the quoted excerpts from the arraignment.

The public policy of this state, as expressed in both court rule[1] and statute,[2] discourages the granting of a continuance other than under the most compelling circumstances.

On his motion for adjourning the trial, defendant had the burden of demonstrating good cause and he further had to show that the grounds for continuance did not arise out of his own fault or neglect.

Defendant was first arraigned in September, 1969, but his trial did not take place until December of that year. During this period of approximately 2-1/2 months he was free on bond and could have arranged for other counsel of his own choice, or, alternatively, he could have petitioned the court for appointed counsel if he were indigent.

The record discloses that both Mr. Kahn and resident counsel received timely notice of the date of pretrial and of the trial. It was the defendant's freely exercised choice to proceed as he did. The choice was not forced upon him.

But all this to the contrary notwithstanding. Were I convinced that prejudice to the defendant took place in the trial itself, or that errors inuring to his prejudice took place, I would not hesitate to reverse and remand for a new trial. I can find none. I reviewed the record with extreme care be-

---

[1] "It is the policy of this rule to encourage the diligent preparation and trial of cases. Continuance for any cause shall not be granted unless a showing is made and the court finds that the grounds for continuance do not arise out of the fault or negligence of the moving party and the court finds that substantial justice more nearly will be obtained." GCR 1963, 503.

[2] MCLA § 768.2 (Stat Ann 1954 Rev § 28.1025) provides in pertinent part that: "No adjournments, continuances or delays of criminal causes shall be granted by any court except for good cause shown in the manner provided by law for adjournments, continuances and delays in the trial of civil causes in courts of record * * * ."

cause of defendant's age and the harshness of the mandatory minimum sentence involved. Mr. Buer rendered very able assistance to the defendant, particularly in the crucial cross-examination of the state's principal witness.

Under the quoted examination of the defendant and the trial court's offer to appoint counsel at public expense if defendant so chose, I can not see how abuse of discretion by the trial judge is an issue. The defendant was offered a choice. He chose to proceed.

I can find no error upon which reversal could be predicated. I would affirm.