PEOPLE v OSTEEN

1. CONSTITUTIONAL LAW—CRIMINAL LAW—SENTENCING—CRUEL OR UNUSUAL PUNISHMENT—HEROIN.

A sentence of 20 to 25 years for the sale of heroin is neither cruel nor unusual in light of the societal loss to heroin addiction.

2. APPEAL AND ERROR—COURT RULES—ORDERS—LEAVE TO APPEAL—SUMMARY DISPOSITION—PRECEDENT.

A general court rule provides that reasons given for each denial of leave to appeal are not to be regarded as precedent and the rationale for this rule may well apply to orders granting leave to appeal followed by summary disposition because the ramifications of the order in either case may not receive the degree of attention given to opinions and, since the order responds to the particular need created, it may govern only the case presented and the Court of Appeals is justified in heeding an order of the Supreme Court as no precedent especially where a subsequent order of the Supreme Court has stated that such prior order stands for no precedent (GCR 1963, 904.4).

3. CRIMINAL LAW—EVIDENCE—PRIOR CONVICTIONS—DISCRETION.

The admissibility of evidence of prior convictions for impeachment purposes is within the trial judge's discretion and among the factors to be considered are the nature of the prior offense, whether it is for substantially the same conduct for which the accused is on trial, and the effect on the decisional process if the accused does not testify out of fear of impeachment by prior convictions.

4. CRIMINAL LAW—EVIDENCE—PRIOR CONVICTIONS.

A prosecutor has no "right" to stand before the jury and recite a defendant's conviction record and when the admission of such a record is challenged he must offer reasonable grounds upon

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 535.
[2] 4 Am Jur 2d, Appeal and Error § 309.
[3–5] 53 Am Jur, Trial § 38.
  30 Am Jur 2d, Evidence § 1175.

which the trial judge can justify his exercise of discretion in favor of admission.

5. CRIMINAL LAW—EVIDENCE—PRIOR CONVICTIONS—MISDEMEANORS.

It was error for a trial judge to permit a prosecutor to read, under the facade of cross-examination and ostensible protection of the impeachment statute, a defendant's entire conviction record, consisting of 15 misdemeanor convictions only one of which had even a remote relationship to the crime charged (MCLA 600.2158).

Appeal from Ingham, Jack W. Warren, J. Submitted Division 2 November 8, 1973, at Lansing. (Docket No. 13145.) Decided April 24, 1973. Leave to appeal denied, 390 Mich 760.

Gary Osteen was convicted of sale of heroin. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Raymond L. Scodeller,* Prosecuting Attorney, and *James R. Ramsey,* Assistant Prosecuting Attorney, for the people.

*Bell, Bennett & Vilella,* for defendant on appeal.

Before: McGREGOR, P. J., and BRONSON and TARGONSKI,* JJ.

BRONSON, J. Defendant was convicted by jury verdict for the sale of heroin and sentenced to a prison term of 20 to 25 years. MCLA 335.152; MSA 18.1122. On January 5, 1972, this Court by order granted leave for defendant's delayed appeal. Defendant's brief and supplemental brief contain ten allegations of error. Following due consideration, we find that only two allegations merit discussion:

(1) Does the Supreme Court order of *People v Martin* require a reversal of defendant's conviction

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

and resentencing in light of the Controlled Substance Act of 1971, and

(2) Did the trial judge commit reversible error by permitting the prosecutor to cross-examine defendant with regard to 15 prior misdemeanor convictions for purposes of impeachment?

The facts precipitating these issues are as follows.

Defendant was charged with selling heroin to one Jerry Wright on August 2, 1970. At trial, Wright testified that on the evening of August 2 he rode with Kim Potter to the parking lot of a Lansing restaurant where the duo met two police officers. The officers gave Wright $20 for the purchase of heroin and followed the duo to an address defendant had given Wright earlier in the day. Wright and his companion arrived at approximately 8 p.m. While Potter waited in the car, Wright approached the apartment at the given address and was admitted by Sharon Bahl. Wright and defendant proceeded to the bedroom where the purchase was consummated, the $20 being exchanged for two tinfoil packets subsequently identified as containing heroin. Wright was not regularly employed by the police department, but indicated that he initiated the informer relationship and received no compensation or benefits for his services.

Sharon Bahl testified that she resided in the apartment where the alleged sale occurred. She confirmed defendant's presence at the scene and stated that defendant gave her $20 to satisfy an outstanding debt five or ten minutes after defendant and Wright went into the bedroom.

Defendant offered eight relatives to establish his alibi defense that he was attending a family picnic at Lake Lansing on August 2, 1970. Following the picnic, everyone returned to the home of defend-

ant's parents between 7:30 and 8:30 p.m. Defendant's testimony confirmed the proffered alibi, and he denied being at Sharon Bahl's apartment on August 2. The trial was concluded by the prosecution's offering the testimony of Cheryl Frost, a visitor present at the apartment on the day in question, to rebut defendant's denial of being at the scene of the crime.

Defendant's first allegation of error is based upon a Michigan Supreme Court order issued in the case of *People v Martin,* 387 Mich 766 (1972). The text of this order provides:

"Leave to appeal granted, March 30, 1972, on the *sole ground* that the *sentence was excessive and constituted cruel and unusual punishment.* The case is remanded to Saginaw County Circuit Court for *resentencing* on or after April 1, 1972 *in the light of 1971 PA 196."* (Emphasis added.)

The ambiguity of the decisional basis of this order and its juxtaposition to recent decisions involving constitutional challenges to drug convictions cast doubt upon its intended precedential effect. Finding the potential application of this order to possess significant ramifications, we review it with care.

The threshold inquiry is to determine the legal proposition upon which the order is based. The Supreme Court's mandate is less than clear since the order is susceptible to at least two interpretations. Since the order cites no authority justifying a remand for resentencing, save "1971 PA 196", the first interpretation relies upon this reference. The cited statute is entitled the "Controlled Substance Act of 1971"[1] (hereinafter the Controlled Substance Act) which repealed and replaced the

---

[1] MCLA 335.301 *et seq.;* MSA 18.1070(1) *et seq.*

prior statutes[2] controlling the unlicensed use, sale, and possession of narcotics with new standards and punishments. Significantly, the *Martin* order applied a statute effective April 1, 1972 to a narcotics conviction and sentence consummated before this effective date. If this characterization is proper, we cannot find a justification for such retroactive application of the act.

Section 61 of the act contains a saving clause, which in pertinent part provides:

"(1) Rights and duties which have matured, penalties which have been incurred, proceedings which have begun and prosecutions for violations of law *occurring before the effective date* of this act are not *affected or abated* by this act, *except as provided in this subsection.* * * * " MCLA 335.361; MSA 18.1070(61). (Emphasis added.)

This language is in accord with the general proposition that statutes are not given retroactive application. *Barber v Barber,* 327 Mich 5 (1950); *Briggs v Campbell, Wyant & Cannon Foundry Co,* 379 Mich 160 (1967). Although this proposition is predicated upon a concept of vested rights arising in civil cases, such affords a degree of certainty to the administration of criminal justice which similarly merits preservation. Adoption of this position is in accord with the following statement: "The rule is that the sentence or punishment imposed is that prescribed by the statute in force at the time of the commission of a crime". *People v Poole,* 7 Mich App 237, 243 (1967).

The exceptions referred to in § 61 are two-fold. First, defendants not sentenced by the effective date of the statute may receive the benefit of the decreased sentences contained therein. Second, de-

[2] MCLA 335.366; MSA 18.1070(66).

fendants sentenced prior to the effective date of the statute receive the following benefit:

" * * * Within 6 months after the effective date of this act, the parole board *shall* review the sentences of *all persons* who, on the effective date of this act, are *serving sentences* imposed *for* violation of *offenses similar to those set out in chapter 4* and *shall* forward its recommendations to the *governor* with respect to *commutation of such sentences."* MCLA 335.361(1); MSA 18.1070(61)(1). (Emphasis added.)

This language manifests the legislature's rejection of a retroactive application of the act. The provision substitutes such retroactivity with review by the governor for purposes of commuting perfected sentences. Since Martin's sentence fell within the purview of this provision, the *Martin* order's reliance upon retroactivity of the statute would be misplaced.

The second possible interpretation of the *Martin* order flows from the fact that leave to appeal was granted upon "the sole ground that the sentence was excessive and constituted cruel and unusual punishment". The Supreme Court may have reversed Martin's sentence upon this ground for appeal and directed resentencing in compliance with the Controlled Substance Act when effective. The problem created by this interpretation is that the order (1) fails to state the decisional basis for reversal, (2) reversal upon the submitted grounds for appeal requires an extension of current case law, and (3) such a reversal upon constitutional grounds would be based upon unreasoned silence. The sentence challenged in the *Martin* order was a 20- to 25-year prison term for the *sale of heroin.* If the *Martin* order constitutes the Supreme Court's pronouncement that such a sentence for the sale of heroin constitutes cruel and unusual punish-

ment, it envisages a proposition not heretofore articulated. We are loath to attach such precedential significance to an order without express direction.

Recently, the Supreme Court in *People v Lorentzen,* 387 Mich 167, 176 (1972), held that a statute imposing a 20-year minimum sentence for the unlawful *sale of marijuana* constituted cruel and unusual punishment. The *Lorentzen* Court reached this conclusion after comparing the sentences of crimes involving the sale of various harmful substances and crimes involving harm to people with the concept that punishment is cruel and unusual if it "is in excess of any that would be suitable to fit the crime". The *Lorentzen* Court took cognizance of the fact that the maximum penalty for the same crime under the recently enacted Controlled Substances Act was limited to four years. The *Lorentzen* decision represented the Court's awareness of the panoply of criticism and discussion surrounding marijuana's use, addictive effect, if any, legitimacy, and proper punishment.[3] It cannot be doubted that this background and disparity between a mandatory sentence of 20 years under the old statute and a maximum sentence of four years under the new statute led the *Lorentzen* Court to find the mandatory 20-year minimum sentence cruel and unusual.

Since the statute declared unconstitutional by the *Lorentzen* Court encompassed both marijuana and heroin convictions, the issue becomes one of whether *Lorentzen* was intended to apply to a sale

[3] *See, e.g., People v Sinclair,* 30 Mich App 473 (1971), *rev'd,* 387 Mich 91 (1972); *People v Rios,* 27 Mich App 54 (1970), *rev'd,* 386 Mich 172 (1971); *People v Bruinsma,* 34 Mich App 167 (1971). *See, also,* cases interpreting the precedential significance of *Sinclair: People v Griffin,* 39 Mich App 464 (1972); *People v Cannon,* 41 Mich App 85 (1972); *People v Waxman,* 41 Mich App 277 (1972), *leave granted with summary reversal,* 388 Mich 774 (1972).

of heroin conviction. A review of the underpinnings of the *Lorentzen* decision and absence of any language extending its applicability beyond the Court's concern with the marijuana problem negates such extension. This conclusion is supported by the Court's reluctance in *People v Sinclair,* 387 Mich 91 (1972), to view marijuana as a narcotic drug. Although the statute declared unconstitutional applied to narcotic drugs, the *Sinclair* decision creates a distinction between marijuana and narcotic drugs providing a rationale for the *Lorentzen* Court's silence regarding the effect of its decision upon heroin convictions.

This writer's views incorporating such a distinction and considering the milieu surrounding marijuana convictions are set forth in *People v Bruinsma,* 34 Mich App 167, 185 (1971). With regard to the predecessor of the Controlled Substance Act, I stated:

"The present statute results in a lamentable failure to discriminate between large-scale pushers of *hard narcotics* and the individual who merely sells or gives a *marijuana* cigarette to an acquaintance." *Bruinsma, supra.* (Emphasis added.)

Surely, a distinction between hard narcotics such as heroin and marijuana is justified. Heroin can be lethal. It can be no less deadly than the weapons used to commit homicides. The only question is how long it takes the addiction to complete its deadly goal. The menace to society created by heroin pushers is dramatized by the fact that they are now found invading our high schools and grade schools. We must zealously guard seemingly irreversible addiction during such formative years. In light of the societal loss to heroin addiction, we

are not prepared to say that a 20- to 25-year sentence for its sale is either cruel or unusual.[4]

It would be improvident for this Court to assume that an issue of such proportions would be decided without discussion. The *Lorentzen* decision should not be extended to sale of heroin cases upon a mere assumption. Since the *Martin* order does not cite *Lorentzen* as the basis for its disposition, a conclusion that it extended *Lorentzen* to heroin cases *sub silentio* is dubious.

We are not unmindful that the courts speak through orders and judgments. *Boyle v Berg,* 242 Mich 225 (1928); *Michigamme Oil Co v Huron Valley Building & Savings Ass'n,* 280 Mich 12 (1937); *People v Kennedy,* 384 Mich 339 (1971). Although the Supreme Court speaks through an order, its precedential effect is not clear. The fact that such orders are printed in small type and segregated from opinions is not without significance. GCR 1963, 904(4), provides that the reasons given for each denial of leave to appeal are not to be regarded as precedent. The rationale for this rule may well apply to orders granting leave to appeal followed by summary disposition. The ramifications of the order in either case may not receive the degree of attention given to opinions. Since the order responds to the particular need created, it may only govern the case presented. This factor, combined with the ambiguity and unreliability of the decisional basis of the *Martin* order, justifies our failure to implement the *Martin* order as precedent for this jurisdiction.[5]

---

[4] The same conclusion, without discussion, is found in *People v Stedman,* 41 Mich App 393 (1972).

[5] Subsequent to the writing of this opinion the Supreme Court similarly refused to accord the *Martin* order precedential significance by order issued in the case of *People v Ford,* 389 Mich 751 (1972). The Supreme Court denied leave to appeal therein, stating that:

" * * * *People v Lorentzen,* 387 Mich 167 (1972), is inapplicable

Defendant's 'second allegation of error is based upon the trial judge's admission of 15 misdemeanor convictions for purposes of impeachment. Upon cross-examination defendant admitted the following prior convictions: three for illegally possessing alcohol; three for being intoxicated in a public place; three for assault and battery; two for being a disorderly person; two for driving with a suspended license; and one each for allowing an unlicensed person to drive his car and attempting to possess barbituric acid not in a container. Although defense counsel objected to the use of such prior convictions, the trial judge permitted the inquiry "for the purpose of attack on credibility". Defendant contends that the trial judge committed reversible error, and we agree.

The use of misdemeanors for purposes of impeachment is no stranger to the trial courts of this state, but an allegation of error based thereon has received too little attention. The general practice of admitting prior convictions for purposes of impeachment has been statutorily sanctioned[6] and judicially approved.[7] This history and precedent need not blind us from the potential prejudice inherent in the practice or the realities of its use.

The present case represents a vivid example in which the admission of evidence for the limited purpose of impeachment does not comport with defendant's right to a fair and impartial trial. Defendant was on trial for the sale of heroin, yet only one misdemeanor (attempted possession of a barbituric acid not in a container) had even a

and that the order of this Court dated March 30, 1972, in *People v John Martin,* 387 Mich 766, was improvidently entered and stands as no precedent under the facts and issues in the instant or similar cases."

[6] MCLA 600.2158; MSA 27A.2158.

[7] *People v Di Paola,* 366 Mich 394 (1962); *People v Payne,* 37 Mich App 442 (1971).

remote relationship to the charged crime. The record indicates that almost the entire cross-examination consisted of the prosecutor's *pro forma* recitation of defendant's conviction record under the guise of impeachment. This case dramatically emphasizes the need to closely scrutinize the admission of misdemeanor convictions.

In *People v Farrar,* 36 Mich App 294, 302–303 (1971), this Court adopted an interpretation of the impeachment statute which placed the admissibility of prior convictions within the trial judge's discretion. The *Farrar* panel adopted this construction upon the authority of *Luck v United States,* 121 US App DC 151; 348 F2d 763 (1965).[8] Guidelines for the exercise of this discretion found in *Gordon v United States,* 127 US App DC 343; 383 F2d 936 (1967), were likewise approved by the *Farrar* Court, stating:

"Among the factors to be considered are the nature of the prior offense, whether it is for substantially the same conduct for which the accused is on trial, and the effect on the decisional process if the accused does not testify out of fear of impeachment by prior convictions."

The admission of defendant's misdemeanors is not consistent with these guidelines. The prosecutor has no "right"[9] to stand before the jury and recite defendant's conviction record. When admission is challenged he must offer reasonable grounds upon which the trial judge can justify his exercise of discretion in favor of admission. The dissimilarity

---

[8] The *Luck* doctrine has subsequently been overruled by a statutory revision sustained in *Dixon v United States,* 287 A2d 89 (DC, 1972). Since the Michigan statute has not been similarly modified, this decision does not affect the jurisprudence of this state.

[9] *See People v Farrar,* 36 Mich App 294, 305 (1971), footnote 21, wherein Judge LEVIN distinguishes Michigan cases intimating that a prosecutor has a "right" to introduce prior convictions.

between an alleged conviction and charge was held
by the Court in *People v Simard,* 314 Mich 624,
630–631 (1946), to justify exclusion:

" * * * The prosecution thus tried to show that
defendant was guilty of a misdemeanor that *had not
the remotest connection with the crime charged* and
was *in no way similar in character.* * * * While much
latitude is allowed in cross-examination to test credibil-
ity, the prosecutor cannot bring out independent issues
involving other alleged crimes that are entirely *dissimi-
lar both in nature and motive* and have nothing what-
soever to do with the issue involved. * * * "

This proposition is no less applicable to defend-
ant's prior convictions which are entirely dissimi-
lar from the sale of heroin charge.

Recently, this writer authored a separate opin-
ion in *People v Sanders,* 43 Mich App 698 (1972),
establishing an additional guideline for trial
judges.[10] There defendant challenged the admission
of a misdemeanor, being a disorderly person, for
impeachment purposes in his murder trial. Al-
though it was not clear whether the trial judge
admitted the conviction pursuant to an exercise of
his discretion, it was concluded that if the admis-
sion resulted from an affirmative exercise of such
discretion, error ensued. This conclusion was based
upon the fact that misdemeanors are suspect be-
cause of their diminished probative value. The
challenged misdemeanor in *Sanders* was compared
with a scale measuring the prejudicial effect and
probative value. of proffered convictions and found
to possess the lowest relevancy-highest prejudicial
effect. The admission of Sanders' misdemeanor
conviction in a trial which turned exclusively upon

[10] Although three separate opinions were written in this case, a
conclusion that the admission of the challenged misdemeanor convic-
tion constituted error received majority approval.

the issue of self-defense was considered error as being inconsistent with the enunciated fundamental evidentiary standards.

This appeal presents the same danger to the preservation of respect for our system of criminal justice as *Sanders,* except that it underscores the abuse and degradation of defendant's right to a fair and impartial trial by the number of misdemeanor convictions involved. The prosecutor's practice of reading defendant's entire conviction record to the jury under the facade of cross-examination and ostensible protection of the impeachment statute should not be sanctioned. The present case reveals an egregious failure to consider the number, remoteness, relationship with the charged crime, and probative value-prejudicial effect of the misdemeanors offered for impeachment purposes. Defendant's trial turned exclusively upon the defense of alibi. Like *Sanders,* resolution of this issue depended exclusively upon defendant's credibility making the admission of prior crimes critical. The limited nature of the exception upon which the admission of prior convictions is predicated should be kept foremost in the minds of our trial judges as they attempt to fairly administer the difficult and complex evidentiary standards. The admission of the challenged misdemeanors are in contravention of current guidelines and constituted an abuse of discretion. Defendant's conviction must be reversed and the case remanded for a new trial.

Reversed and remanded.

All concurred.