*In re* McHUGH.

1. ATTORNEYS—DUTIES—ATTENDANCE UPON TRIALS.

Attorneys are officers of the court, and it is their duty to be in court upon the trial of causes duly set for trial of which they have had due notice.

2. CONTEMPT—ATTORNEYS—ABSENCE FROM COURT—ACTIONS CONSTITUTING CONTEMPT.

Where attorneys retained to defend a man accused of murder, after having been twice denied motions for a continuance, absented themselves from the jurisdiction of the court upon the day set for the trial, instead of appearing, as was their duty, that the court might examine them and determine for itself whether they were in too precarious a state of health to enter upon the trial, it was for the court to determine, in proceedings to punish them for contempt, whether their conduct amounted to contempt, and whether they had purged themselves therefrom.

3. CONTINUANCE—CRIMINAL CASE—ABSENCE OF WITNESS.

The absence of an eyewitness whose name is indorsed upon an information for murder is not good ground for a continuance, moved before trial, since the people are bound to produce such a witness at the trial, failing in which, a continuance or adjournment may be granted for that purpose.

4. JUDGES—DISQUALIFICATION—OPINION UPON MERITS.

That the judge has criticised a jury for acquitting a person accused of murder in a case in which the defense was insanity, does not disqualify him from sitting in a subsequent case in which the defense is insanity.

5. CONTEMPT—PROCEEDINGS—REGULARITY—WAIVER.

That the acts complained of were not committed in the presence of the court, and no petition or affidavit was presented to the court as a foundation for contempt proceedings, is not available to respondents who were not arrested upon the capias ordered by the court, but came from a foreign country into court and voluntarily submitted themselves to its jurisdiction, whereupon they were given the same opportunity to make their defense that they would have had upon the filing of a petition or affidavit and the issuance of an order to show cause.

6. CONSTITUTIONAL LAW — CRUEL AND UNUSUAL PUNISHMENT — WHAT CONSTITUTES.

Fine and imprisonment not in excess of that prescribed by law for the offense of which respondent is convicted does not constitute that cruel and unusual punishment which is prohibited by the Constitution.

7. CONTEMPT—PROCEEDINGS—REVIEW—EXCESSIVE PUNISHMENT.

On certiorari to review contempt proceedings, this court cannot review the evidence to determine whether the sentence should have been less, it being the province of the trial court, before whom the witnesses and the conduct of the respondents are produced, to impose the amount of the sentence.

Certiorari to the recorder's court of Detroit; Connolly, J. Submitted February 28, 1908. (Docket No. 95.) Decided May 1, 1908.

Philip A. McHugh and Charles P. O'Neil were adjudged guilty of contempt, and sentenced to pay a fine of $250 each, and defendant McHugh to confinement for 30 days in the county jail. Affirmed.

*Philip T. Van Zile* and *Thomas J. Navin* (*Harrison Geer*, of counsel), for appellants.

*Allan H. Frazer*, for appellee.

The respondents were found guilty of contempt of court and O'Neil fined $250 and McHugh fined $250 and imprisonment for 30 days. The case is now before us for review on certiorari.

The facts essential to here state, as appears from the return of the court, are as follows: The respondents, attorneys at law, were retained to defend one Peter Schlaf for the crime of the murder of his wife. The deed was committed January 25, 1907. Schlaf was arrested on that day, and was examined April 7th; was bound over to the recorder's court for trial; was arraigned May 1st, and pleaded not guilty. He had been in jail from the date of his arrest to the time fixed for his trial as hereinafter stated.

The respondents were Schlaf's attorneys before and at the time of his arraignment. They entered their formal appearance as attorneys on June 25th.

About two years before these proceedings the docket of the recorder's court became in such a condition through delays made by attorneys on one pretext and another that the court made a rule not to permit the postponement of the trial of any case, particularly murder cases, except in important emergencies and in order to promote the administration of justice.

There are six terms of the recorder's court each year,—commencing the first Wednesday in January, March, May, July, September, and November. It had been determined to summon no jury for the July term, and at the time of the occurrence here involved it was too late to summon one for that term. On June 22d the respondents applied verbally in person to Judge Connolly for a postponement of the trial of said Schlaf. The judge called their attention to the above rule, and stated that the case must be tried at the then continuing May term,

which would end July 2d, and that a jury for the trial of said Schlaf would have to be impaneled before that day. The judge then informed them that the trial would commence June 26, 1907, and ordered and directed them to be ready to proceed on that day; that said respondents were then in good health, apparently in full possession of their physical strength, and able to proceed with the trial.

On June 26th, the judge opened court with the jury in attendance, prepared to commence said trial. The respondents were not there; respondent O'Neil finally appeared and presented to the court and argued a motion for a continuance of the cause, which motion the court denied, and informed the respondents that he would grant a continuance until June 29th following; that the case would then proceed to trial without fail, and that if the respondents did not care to proceed they could withdraw from the case. The respondents did not withdraw from the case, but on June 29th they filed three motions, —one for a continuance, one for a change of venue, and the third a motion to disqualify the trial judge. A young attorney named Hayes presented the motion for a continuance. The basis of this motion was the absence of a witness whose name was indorsed upon the information as a witness for the people.

A further reason for the continuance was that the prosecuting attorney had stated to the respondents that he did not intend to proceed with the trial of Schlaf at the present term. The motions for change of venue and for the disqualification of the judge were noticed for hearing July 3d.

On June 29th, upon the failure of the respondents to appear, Judge Connolly appointed Hon. Fred N. Aldrich, an attorney at law, to defend Schlaf. Schlaf refused to accept him, would not consult with Mr. Aldrich about his case, and, when asked where he last saw the respondents, refused to answer.

On July 2d the court proceeded to impanel a jury, and while so engaged the respondents appeared in court and

proceeded with the trial of Schlaf. Upon the failure of the respondents to appear in court June 29th, the court made an order for a capias to be issued taking the respondents into custody "to answer a charge of contempt of court for failure to appear in court this day, for the purpose of obstructing the course of justice." Instead of appearing in court on June 29th the respondents packed their suit cases and went to Canada, returning in time to appear in court on July 3d.

On July 3d, the respondents with their counsel voluntarily appeared in court and offered the testimony of themselves and others for the purpose of explaining their failure to appear in court on June 29th. The testimony was received and the respondents given full opportunity to explain their conduct. Upon the conclusion of the testimony and the arguments of counsel, the court found the respondents guilty as above stated.

GRANT, C. J. (*after stating the facts*). Attorneys are officers of the court, and it is their duty to be in court upon the trial of causes duly set for trial of which they have had due notice.

The respondents had undertaken the defense of one charged with murder. They had applied verbally for a continuance, which was refused. Four days later they applied by written motion, supported by affidavit, for a continuance. This was refused and the case again set for trial three days later. It was their duty to be present on that day, unless prevented by circumstances entirely beyond their control. They were in sufficiently good health to pack their suit cases and take a trip upon the cars and ride into the country, and to return again in three days. Their duty to their client, to the court, and to the administration of justice was to appear in court themselves so that the court might examine them and determine for itself whether they were in too precarious a state of health to enter upon the trial, and whether a proper regard for the rights of the people and of the defendant required a

continuance of the case for from two to three months longer, with the alleged criminal confined in the jail. Instead of so doing they presented three motions—one a motion for continuance, to be heard at the opening of court, the other two to be heard four days later. Under the facts set forth in their affidavit for continuance, made by Mr. O'Neil, on the ground of the absence of a witness, the prosecutor would be bound to produce that witness upon the trial, for she was a witness to the killing. Failure to produce her upon the trial would have been ground for continuance, or an adjournment of the case to procure the attendance of the witness. The motion for the disqualification of the judge was without excuse. The only reason offered for such disqualification was that the judge had criticised a jury in a former trial for acquitting the respondent in that case on the ground of insanity. The respondents asserted that their defense in this case was insanity, and therefore the judge was disqualified. If this be so, then any judge, who, under the circumstances of one case, condemns the verdict of a jury, rendered on account of insanity, is disqualified forever thereafter from trying a case where insanity may be the defense. The motion itself was little short of contempt of court. Under all the circumstances, the conduct of the respondents was reprehensible, and under the facts it was the province of the court to determine whether their conduct amounted to a contempt, and whether they had purged themselves by their evidence therefrom.

The first legal question presented is, that the acts constituting the contempt were not committed in the presence of the court, and no petition or affidavit was presented to the court as a foundation for the proceedings. Upon this point many authorities are cited by counsel for the people and for the respondents. It is unnecessary to determine this question. The respondents voluntarily appeared in court, and were given the same opportunity to make their defense that they would have had upon the filing of a petition or affidavit and the issuance of an order to show

cause. They were not seized upon the capias, but came directly from a foreign country into the court and voluntarily submitted to its jurisdiction. It should require no argument to show that they had waived all irregularities in initiating the proceedings. The following authorities are directly in point: *Moore's Case,* 63 N. C. 397; *Hawkins* v. *State,* 125 Ind. 573; *In re Savin,* 131 U. S. 267; *Randall* v. *Brigham,* 7 Wall. (U. S.) 523, 540.

In *Randall* v. *Brigham* it is said:

" He [the respondent] was afforded ample opportunity to explain the transaction and vindicate his conduct. He introduced testimony upon the matter, and was sworn himself. It is not necessary that proceedings against attorneys for malpractice, or any unprofessional conduct, should be founded upon formal allegations against them. Such proceedings are often instituted upon information developed in the progress of a cause; or from what the court learns of the conduct of the attorney from its own observation. Sometimes they are moved by third parties upon affidavit; and sometimes they are taken by the court upon its own motion. All that is requisite to their validity is that, when not taken for matters occurring in open court, in the presence of the judges, notice should be given to the attorney of the charges made, and opportunity afforded him for explanation and defense. The manner in which the proceedings shall be conducted, so that it be without oppression or unfairness, is a matter of judicial regulation."

The court in *Re Savin,* supra, quoted the above language with approval, and said:

"So, in the present case, if the appellant was entitled, of right, to purge himself under oath, of the contempt, that right was not denied to him; for it appears from the proceedings in the district court, made part of the petition for habeas corpus, not only that he was informed of the nature of the charges against him by the testimony of Flores, taken down by a sworn stenographer at the preliminary examination, but that he was present at the hearing of the contempt, was represented by counsel, testified under oath in his own behalf, and had full opportunity to make his defense.

" Our conclusion is that the district court had jurisdiction of the subject-matter, and of the person, and that irregu-

larities, if any, occurring in the mere conduct of the case, do not affect the validity of its final order."

If the respondents had refused to appear in court, as was the case in *Re Wood*, 82 Mich. 75, or if they had been arrested upon the capias and had denied the jurisdiction of the court for the reason that no affidavit or petition was presented to the court setting forth the facts, the respondents would have been in position to raise this question, but their conduct waived it. They voluntarily placed themselves in precisely the same position as they would have been if the proceeding had been such as they now contend was necessary.

It is urged that the sentences were unwarrantably severe and constitute that cruel and unusual punishment which is prohibited by the Constitution. The punishment is not in excess of that provided by law. It is not for appellate courts to determine the amount of punishment. That must be determined by the trial judge from the facts as they are placed before him. We cannot review the evidence to determine whether the sentence should have been less. The witnesses were before the court; the conduct of the respondents was also before the court, and it was for that court, not for this, to determine and impose the amount of the sentence.

The proceedings are affirmed.

MONTGOMERY, HOOKER, MOORE, and MCALVAY, JJ., concurred.