# WILLIAM H. MURPHY, JR. v.
# STATE OF MARYLAND

[No. 1445, September Term, 1979.]

*Decided July 9, 1980.*

The cause was argued before MOORE AND COUCH, JJ., and

JACOB S. LEVIN, Associate Judge of the Seventh Judicial Circuit, specially assigned.

*Richard V. Falcon,* with whom were *Melnicove, Kaufman & Weiner, P.A.* on the brief, for appellant.

*Bonnie A. Travieso, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *John L. Norton, III, State's Attorney for Dorchester County,* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

Defendant-appellant, William H. Murphy, Jr., a member of the Bar with offices in Baltimore City, was charged with direct contempt of court in the Circuit Court for Dorchester County for failure to appear in that court as defense counsel in two criminal trials scheduled for September 6, 1979. On September 14, 1979, the court (Edmondson, J.) issued an Order to Show Cause why defendant should not be held in contempt of court.[1] After a hearing before Judge Edmondson on October 15, 1979, defendant was found in direct contempt and fined $1,000.00.

On this appeal, he raises three issues: (a) that his failure to appear in court must be treated as a constructive contempt and not as a direct contempt; (b) that the trial court erred in holding that a defendant in a case of criminal contempt has the burden of proving exculpatory circumstances; and (c) that his failure to appear was not contemptuous.

I

On September 6, 1979, two criminal cases were scheduled for trial in the Circuit Court for Dorchester County: *State v.*

---

1. As noted *infra,* the Court recognized that under Md. Rule P3 (a) a direct contempt does not require a show cause order but that it wished "to preserve this defendant's right to due process."

*Dobson,* No. 3803, a murder case; and *State v. Price,* No. 3796, a "natural resources" case. At 10:00 a.m. the trial judge, the Honorable Charles E. Edmondson, called the first case. The State was present. Ms. Dobson, the defendant, was present but her attorney, Mr. Murphy, was absent. She told Judge Edmondson that she had last seen Mr. Murphy in March when she was released from custody.

John L. Norton, III, the State's Attorney for Dorchester County, then informed the court that Mr. Murphy had telephoned him the previous evening and had said that he would not be present for the two criminal trials because of the carry-over of a criminal trial in Baltimore in which he was engaged. Mr. Norton indicated that the State had summoned a number of witnesses from around the State and that they were present to testify in both cases. He also indicated that Mr. Murphy had failed to appear for a pretrial suppression hearing the week before.

Judge Edmondson then related that Mr. Murphy had telephoned him at 9:20 a.m. that morning, forty minutes prior to the scheduled start of trial, had told him that he was involved in a jury trial in Baltimore City, and had said that he could not appear for the two Dorchester County trials.

Called as a witness to explain the scheduling of the two criminal cases, Mrs. Donna Pyle, Chief Deputy Clerk of the Circuit Court for Dorchester County, testified that the September 6, 1979 trial date was set on May 25, 1979 after several telephone calls to Mr. Murphy's office because "I was informed by that office this was the only date that Mr. Murphy was free." At that time she was told by the attorney's secretary that he "felt that he could try both cases [in] one day." She also testified that, in August 1979, Mr. Murphy was in Mrs. Pyle's office to discuss another, unrelated case; the September 6th cases were mentioned and "he gave no indication that he would not be here at that time."

Prior to hearing from the two criminal defendants whom Mr. Murphy was scheduled to represent, the trial judge asked the State's Attorney to review the law and report back

to him so that "we can reach some decision whether or not to cite Mr. Murphy for contempt of court for failing to appear today."

The defendant in the second case, Gregory Wesley Price, then informed the court that because of the absence of his attorney, Mr. Murphy, he wanted to dismiss his case, an appeal from the District Court. Mr. Price stated that he had not talked to Mr. Murphy for months and that "he has been giving us a run around." Judge Edmondson thereupon dismissed Mr. Price's appeal and waived the court costs.

Mrs. Dobson, the other defendant, requested a hearing in chambers, which was held immediately after the court adjourned. At that hearing Mrs. Pyle, the Deputy Clerk, indicated that Mrs. Dobson's trial could not be rescheduled for another five or six months. Judge Edmondson, who advised Mrs. Dobson to get in touch with Mr. Murphy immediately, also stated:

"We have had such trouble scheduling cases in which Mr. Murphy is involved that we said, 'You pick your trial date and that's when we will have it.' That's what we do and then he doesn't show up."

A Show Cause Order issued on September 14, 1979; it ordered Mr. Murphy to appear on October 15, 1979 to show cause why he should not be held in contempt of court. In the Order, Judge Edmondson stated that although a direct contempt may be summarily punished pursuant to Md. Rule P3 (a), he wished "to preserve this Defendant's right to due process and to therefore give him an opportunity to show cause why he should not be held in contempt. . . ."

At the hearing Mr. Murphy argued that Md. Rule P4, dealing with constructive contempts, and not Md. Rule P3, should apply to the proceedings because his alleged contempt was at most constructive. Judge Edmondson, citing *Kandel v. State,* 252 Md. 668, 250 A.2d 853 (1969), ruled that the defendant's failure to appear at trial as defense counsel at the appointed time constituted a direct contempt, punishable summarily. Mr. Murphy then entered an objection to the proceedings, citing alleged denials of due

process of law and the right to confront the witnesses against him.

Mr. Murphy explained to the court that he had been representing Samuel Floyd in a murder trial in the Criminal Court of Baltimore on September 6, 1979. He stated that a scheduled August 29th trial date in the case had been delayed two days because the *Hicks* [2] decision had caused a tremendous backlog in that court. Acknowledging that he had not appeared for the pretrial suppression hearing scheduled for August 31st, Mr. Murphy said that he had called Circuit Court Judge Simpkins to inform him that the Floyd trial conflicted. Mr. Murphy then offered this explanation to the court:

> "So, backing up, Wednesday, August the 29th, Samuel Floyd was scheduled to go to trial for murder in the criminal court in Baltimore City. On Wednesday we were notified no court was available, not to go anywhere because one might be imminently available.
>
> "On Thursday no court was yet available. We were told not to go anywhere, a court would be imminently available. And, either Thursday late afternoon or Friday morning I contacted Judge Simpkins to let him know that because they had found a court that I would not be able to be there on the 31st.
>
> "Now the Floyd case continued to Tuesday, September the 4th, Wednesday, September the 5th, Thursday, September the 6th et cetera, et cetera.
>
> "Now once having been started, and once having put Judge Simpkins on notice, I took it for granted, as I felt I had a right to do, that, therefore, this court, because he was sitting in this court, knew that I was involved in a continued jury case. . . ."

According to Mr. Murphy, the State's Attorney told him on September 5th during their telephone conversation that

---

2. State v. Hicks, 285 Md. 310, 403 A.2d 356 (1979).

"everything is going to be alright, no problem." When he called Judge Edmondson the next morning, he was told that he would be held in contempt of court if he failed to appear. Mr. Murphy "tried to persuade the Court not to do that, and we had a cordial conversation. . . . I was convinced that the Court was going to take the action that it did, and turned out to be correct."

Acknowledging that he never contacted the assignment clerk to inform her of his conflict, Mr. Murphy said "I didn't know that it was my obligation to call [her]." He also stated that he had asked his secretary to call the court to inform it of the conflict "but she simply didn't follow through on this particular point. . . ."

When Mr. Murphy finished his testimony, the court heard from Mr. Norton, the State's Attorney. He related that his office had been in contact with Mr. Murphy's office "a great deal" during the period immediately preceding the scheduled trial. Mr. Norton also stated that "the reason I was making a great number of calls to his office was to find out whether or not he would be able to appear at the trial September 6th." When questioned by the court, Mr. Norton stated that the telephone call from Mr. Murphy on September 5th was the "[f]irst time I knew he would not be here. . . . Up until that time . . . everything was tentative, unsure, uncertain." Judge Edmondson then pointed out that the court personnel "thought he would be here up until 9:20 the morning of September the 6th."

After a brief recess the court issued an opinion from the bench in which it stated "that this Court was not aware of any possible postponement until you called me at 9:20 on the morning of September the 6th, 1979, which was the date set for trial for both cases." In the opinion the court observed that the contempt proceedings were motivated solely by the need to ensure that the court's calendar is not delayed by the absence of attorneys, parties, or witnesses:

"I hope you understand how I feel. Now I want to make one thing clear to you — I'm not mad with you. I guess it could be said I'm disturbed with you

because of the trouble it causes this court. But, in all sincerity you are an excellent lawyer and I would rather see you come in this court and try a criminal case as anybody that's been in this court because you try a good case. But, we have the greatest time trying to get you here to try them. And that's what is causing us the trouble."

At the conclusion of his opinion Judge Edmondson found: "We think you violated the rules, we think the facts proved that, and we have cited you for contempt. We find you in contempt, and we are going to fine you." The fine imposed by the court was $1,000.00,[3] which was based on:

"Direct cost of convening this court today with jurors, all the necessary people, I think is in excess of $500. If you added on all the costs, I think it is safe to say it would cost $1,000 a day, all the indirect and direct costs. I think a reasonable fine in this case is $1,000."

On October 17, 1979 the court issued an Order of Contempt reciting all the facts "known to the Court of its own knowledge," including the fact that "the Court, the parties, the witnesses, and the jurors were all greatly inconvenienced by the failure of Mr. Murphy to appear in Court at the time scheduled for trial or to give the Court timely notice of his intention not to appear."

## II

Judge Edmondson treated defendant's failure to appear as a direct contempt of court.[4] On appeal, Mr. Murphy argues

---

**3.** On appeal, defendant does not challenge the amount of the fine imposed.

**4.** The statutory authority for a court's exercise of its power to punish for contempt may be found in Md. Cts. & Jud. Proc. Code Ann. § 1-202 (a) (1980). Upon passage of an order or judgment finding a person in contempt, the contemnor has an immediate right of appeal under Md. Cts. & Jud. Proc. Code Ann. § 12-304 (a) (1980). At common law there was no right to appellate review of a judgment of contempt, whether civil or criminal.

that his behavior was, at most, a constructive contempt that must be proceeded against within the strictures of Md. Rule P4.

The Maryland Rules define a direct contempt as one "committed in the presence of the court, or so near to the court as to interrupt its proceedings." Md. Rule P1 (a). A direct contempt may be punished summarily by the court, Md. Rule P3 (a), whereas a constructive contempt requires a more elaborate procedure, including notice to the defendant in the form of a show cause order allowing the defendant reasonable time for the preparation of the defense. Md. Rule P4 (b). Furthermore, unless the defendant otherwise consents, the judge who issued the citation for constructive contempt is disqualified from presiding at the hearing except where the contempt consists of failure to obey an order or judgment in a civil case. Md. Rule P4 (d) (2). In sum, whether the defendant is subject to summary punishment or is entitled to an adversary hearing hinges on whether the contempt is classified as direct or constructive.

In *State v. Roll and Scholl,* 267 Md. 714, 734, 298 A.2d 867, 879 (1973), the Court of Appeals analyzed the constitutional background of summary direct contempt proceedings. Judge Digges, writing for the Court, explicated direct contempt in the following language:

> "A direct contempt occurs when the actions of the contemnor interrupt the order of the courtroom and *interfere with the conduct of business.* When such disruption occurs within the sensory perception of a presiding judge he will have sufficient knowledge of the contemptuous act which tends to interrupt the proceedings and will not have to rely on other evidence to establish all the details, though *some of them can be supplied by additional testimony."* (Emphasis added.)

Harford County Education Association v. Harford County Board of Education, 281 Md. 574, 585, 380 A.2d 1041, 1048 (1977); Tyler v. Baltimore County, 256 Md. 64, 69, 259 A.2d 307, 310 (1969).

*See Pearson v. State,* 28 Md. App. 464, 482, 347 A.2d 239, 250 (1975). One must look to the nature of the alleged contemptuous acts to determine whether they occurred in the presence of the court. As the court made plain in *Roll and Scholl,* the resort to additional testimony does not indicate that a contempt is constructive; it is the contemptuous act itself which is determinative. *State v. Roll and Scholl, supra,* 267 Md. at 734, 298 A.2d at 879.

In evaluating the nature of Mr. Murphy's alleged contempt we are guided, as was the trial judge, by the leading Maryland case of *Kandel v. State, supra,* 252 Md. 668, 250 A.2d 853 (1969), in which the Court found that the "[u]njustified failure of an attorney to appear in court on time is at least misbehavior on the part of an officer of the court." *Id.* at 671, 250 A.2d at 854. In reviewing Mr. Kandel's contempt conviction the Court noted that in such cases "the guilty one may be punished summarily. . . ." *Id.* at 672, 250 A.2d at 855.

Mr. Murphy argues on appeal that *Kandel* does not control this case because the reasons he gave for his absence and failure to notify the court of his absence "if believed, do excuse his absence as well as the Court's failure to get notice of his absence prior to September 6th." He asserts that none of the facts constituting his excuse occurred in the presence of the court and, therefore, "the Judge had to find facts of which he had no personal knowledge before a judgment of contempt could be reached." This, he contends, distinguishes *Kandel* and requires that his alleged contempt be treated as constructive under Rule P4.

In our view, an attorney plays such an integral role in the judicial process that without his presence the wheels of justice must, necessarily, grind to a halt. The attorney's absence from the courtroom is immediately cognizable by the judge and intrudes upon the operation and dignity of the court. This fact was recognized by the California Supreme Court in a case in which it decided that an attorney's unjustified nonappearance constituted a direct contempt of court:

"It is clear that the trial and the attorney's participation in it are in the court's immediate view and presence and, obviously, petitioner's obstruction of the trial by absenting himself from the court is just as directly within the view and presence and knowledge of the court as would be any other conduct by him during, and directly affecting, the trial."

*Lyons v. Superior Court,* 43 Cal. 2d 755, 759, 278 P.2d 681, 683 (1955).[5] The essence of the contempt, the attorney's absence from trial, occurs in the presence of the court and impacts upon those who are to participate in the obstructed proceedings. Judicial resources are not unlimited; we cannot condone behavior that causes precious time to be wasted away while the court, parties, court personnel, and witnesses await the arrival of the errant attorney.

In our neighboring jurisdiction of the District of Columbia, the failure of an attorney to appear promptly in court has been consistently held to be a direct contempt of court, punishable summarily:

"[W]e explicitly adopt the rule that where an attorney fails to appear in court when he has a duty to do so, 'the offensive conduct, to wit, the absence, occurs in the presence of the court' . . . ."

*Sykes v. United States,* 264 A.2d 894, 895 (D.C. 1970), *rev'd on other grounds,* 444 F.2d 928 (D.C. Cir. 1971); *see In re*

---

5. In Chula v. Superior Court, 57 Cal. 2d 199, 18 Cal. Rptr. 507, 368 P.2d 107 (1962), the California Supreme Court considered the appeal of an attorney cited for contempt for a tardy appearance in the trial court. The court reiterated its view that such a contempt is direct:

"The failure of an attorney, without valid excuse, to be present in court at the announced time . . . constitutes a contempt committed in the immediate view and presence of the court and hence a direct contempt which the court is empowered to punish summarily. . . ."

*Id.* at 203, 18 Cal. Rptr. at 510, 368 P.2d at 110. California has adhered to this view in the intervening years. *See, e.g.,* Arthur v. Superior Court, 62 Cal. 2d 404, 42 Cal. Rptr. 441, 398 P.2d 777 (1965); Rosenstock v. Municipal Court, 61 Cal. App. 3d 1, 132 Cal. Rptr. 59 (1976).

*Rosen,* 315 A.2d 151, 152-53 (D.C.), *cert. denied,* 419 U.S. 964 (1974) (reaffirming the *Sykes* rule).[6]

In the instant case we note that Mr. Murphy's allegedly contumacious conduct extended beyond failing to appear in court at the appointed hour. He was, of course, aware that the trial in Baltimore was proceeding closer and closer to the date of the trials in Dorchester County. Yet he delayed notifying the court until forty minutes before the scheduled start of trial when it was too late to avoid having his own clients, the witnesses, and the jurors assemble for the two trials, both of which were tailored to fit Mr. Murphy's schedule. In an effort to excuse this failure, he pointed to his telephone call to the State's Attorney on the eve of the trial and to his instructions to his secretary — on an unspecified date — to notify the court of his inability to appear. It is obvious that a discussion with the State's Attorney provides absolutely no notice to the court. It has the same effect as a conversation with counsel for an opposing party and cannot be the basis on which a failure to notify the court can be justified. Defendant's attempt to excuse his behavior by placing the blame on his secretary must be equally unavailing. Notwithstanding his instructions to her to inform the court of his inability to appear, the duty to notify the court was his, and he should have, at the very least, provided the supervision and oversight necessary to assure that the court had in fact been informed of his inability to appear. In the appeal of an attorney convicted of a direct contempt of court for failing to appear in court at the scheduled time, the California Supreme Court observed:

"An attorney should notify a responsible officer of

6. Summary contempt proceedings for a tardy attorney were approved by the United States Court of Appeals for the District of Columbia Circuit in *In re Niblack,* 476 F.2d 930 (D.C. Cir.), *cert. denied,* 414 U.S. 909 (1973). The attorney's behavior there was characterized as the "reckless and wilful disregard of the court's order that he appear promptly for the scheduled hearing." *Id.* at 933. *Cf.* In re Gates, 478 F.2d 998, 1000 (D.C. Cir. 1973). In the instant case the scheduling of the two criminal trials for September 6, 1979 at 10:00 a.m. was tantamount to a court order for Mr. Murphy's appearance as counsel at that time. *Cf.* Appeal of Gregory, 387 A.2d 720, 723 (D.C. 1978) ("an order continuing a criminal case for trial to a time certain is a very definite and direct order for defense counsel to appear at that time.")

the court as soon as he realizes he will be unable to appear at the scheduled time. By failing to do so, an attorney assumes the risk that he may be in contempt if the reason for his absence is later deemed insufficient to constitute a valid excuse."

*Arthur v. Superior Court, supra,* 62 Cal. 2d at 410, 42 Cal. Rptr. at 445-46, 398 P.2d at 781-82 (1965).[7] It is patent from the record that Mr. Murphy realized he would be unable to appear well in advance of his telephone call to the court on the morning of trial.

As an officer of the court Mr. Murphy had the duty to appear when ordered to do so or to notify the court sufficiently in advance of his inability to appear. We agree with the well-reasoned opinions from California and the District of Columbia, cited *supra,* that an attorney's unjustified failure to appear or to give reasonable notice thereof is a contempt committed in the presence of the court and, therefore, punishable summarily under Md. Rule P3. *Kandel v. State, supra,* 252 Md. at 672, 250 A.2d at 855; *see Weaver v. State,* 244 Md. 640, 644, 224 A.2d 684, 687 (1966).[8]

---

**7.** In the instant case, as in other cases, the circuit court's finding of contempt was not premised solely on defendant's failure to appear, but rather it took into account his recklessness in not acquainting the court and interested parties in a timely fashion with the conflicts in his schedule. Where an attorney was detained in argument before another court, missed a scheduled hearing, and was, therefore, cited for direct contempt, the District of Columbia Court of Appeals expressed sentiments similar to those of the California court:

"Admittedly, appellant had a crowded schedule, but he was remiss. We find no justification for his neglecting to contact the trial judge to either explain his failure to return as directed or seek leave to be further excused. The predicament in which appellant now finds himself might well have been averted. Had he informed the trial judge or the other judges of the conflicts in his court appointments, he might have been able to rearrange or postpone his various scheduled appearances. A judge is not unmindful that conflicts do occur and will try, as the trial judge did when he excused appellant Friday morning, to accommodate the demands of an attorney's schedule and of another judge's calendar; but there is a duty upon counsel to be considerate of the court and obedient to its directives."

In re Shorter, 236 A.2d 318, 319 (D.C. 1967).

**8.** Appellant correctly points out that several jurisdictions have held that the absence of an attorney from court does not occur "within the presence of the court." The rationale underlying these holdings, however,

In summary, we conclude that Judge Edmondson had sufficient personal knowledge of the facts and circumstances surrounding defendant's nonappearance in court on September 6, 1979, and of his failure seasonably to notify the court of his inability to appear, to find that defendant's behavior was directly contemptuous. Although the court elected to provide defendant with an opportunity to explain his absence, it need not have done so in this case of direct contempt, and the mere provision of a hearing did not transform the direct contempt into a constructive one.

## III

For his second argument, the defendant avers that "the trial court proceeded on the assumption that [he] had the burden of proof, and, moreover, that the contempt need be proven by no more than the preponderance of the evidence. . . ." Our reading of the record makes plain that the court did not place the burden of proof on the defendant, nor did it utilize an incorrect standard of proof. Although Mr. Murphy's direct contempt could have been summarily adjudicated, the court issued a Show Cause Order affording him an opportunity for a hearing.

The Order of Contempt itself recites the "facts known to the Court of its own knowledge. . . ." After setting forth those facts, the court concluded that defendant was in

---

demonstrates that the courts were chiefly concerned that the contemnor be afforded due process in the form of an opportunity to explain his absence. *See, e.g.,* In re Allis, 531 F.2d 1391, 1393 (9th Cir.), *cert. denied,* 429 U.S. 900 (1976); People v. McNeil, 42 Ill. App. 3d 1036, 1038, 356 N.E.2d 1073, 1075 (1976); Ex Parte Hill, 122 Tex. 80, 81-82, 52 S.W.2d 367, 368 (1932); In re McHugh, 152 Mich. 505, 511, 116 N.W. 459, 461 (1908). In the instant case, on the other hand, appellant was given sufficient time to prepare his defense and an opportunity to present it.

In the Maryland case most closely on point the Court of Appeals held:
> "Appellant clearly was not denied due process. He was given the opportunity at the time the fine was imposed to present exculpatory reasons for his tardiness, and attempted to do so."

Kandel v. State, *supra,* 252 Md. at 672, 250 A.2d at 855. Mr. Murphy was given an even more extensive opportunity to explain his absence and the reasons for his neglect in notifying the court of his schedule conflict. No due process violation is evident.

contempt of court. Clearly, all of the facts sufficient for a finding of contempt were personally known to the court. Defendant's burden was to justify or excuse his contempt once it had been established to the court's satisfaction beyond a reasonable doubt. *See Giant of Maryland, Inc. v. State's Attorney for Prince George's County,* 274 Md. 158, 168-69, 334 A.2d 107, 113 (1975); *State v. Roll and Scholl, supra,* 267 Md. at 728, 298 A.2d at 876 (1973); *Winter v. Crowley,* 245 Md. 313, 317, 226 A.2d 304, 307 (1967); *Jones v. State,* 32 Md. App. 490, 497-98, 362 A.2d 660, 665 (1976); *Pearson v. State,* 28 Md. App. 464, 486-87, 347 A.2d 239, 252 (1975); *Meyers v. State,* 23 Md. App. 275, 278, 326 A.2d 773, 775 (1974); *Robinson v. State,* 19 Md. App. 20, 27, 308 A.2d 712, 716 (1973); and *In re Kinlein,* 15 Md. App. 625, 641, 292 A.2d 749, 759 (1972).[9] Defendant was provided with an opportunity to exculpate himself, attempted to do so, but failed. Such a procedure does not negate the State's initial burden to prove the direct contempt beyond a reasonable doubt, and it does not deny defendant due process of law. *Kandel v. State, supra,* 252 Md. at 672, 250 A.2d at 855.

## IV

As a final point, Mr. Murphy argues that there is "no evidence of contemptuous intent" on his part. Specifically, he asserts that the "reasons for his non-appearance were beyond his control and he took reasonable steps to keep opposing counsel and the court informed of these reasons as they developed." Citing *Sykes v. United States,* 444 F.2d 928

---

9. The theoretical and practical underpinnings for this rule have been explained by the California Supreme Court:

"If, in truth, the absence with its ensuing interruption of the court proceedings is occasioned by some cause not reasonably within the attorney's control, the duty of explanation is but part and parcel of his duty to be present, and the burden of producing the exculpatory facts to the court properly falls upon the attorney. The latter, not the judge, is the officer of the court who under those circumstances owes a duty of proceeding."

Lyons v. Superior Court, *supra,* 43 Cal. 2d at 759, 278 P.2d at 683. Of course, this approach is perfectly consistent with our view that the State has the initial burden of proving the criminal contempt, *i.e.,* the attorney's unjustified absence from a known, scheduled trial. Exculpation is then the attorney's burden.

(D.C. 1971) and *United States v. Delahanty,* 488 F.2d 396 (6th Cir. 1973), he states that an essential element of criminal contempt is an intent to commit it.

Even if we assume that *Sykes* and *Delahanty* are in conformity with the applicable Maryland law,[10] both cases recognize that "[t]he requisite intent may of course be inferred if a lawyer's conduct discloses a reckless disregard for his professional duty." *Sykes v. United States, supra,* 444 F.2d at 930; *United States v. Delahanty, supra,* 488 F.2d at 398.

On appeal from a judgment of direct criminal contempt we do not weigh the evidence; we merely assess its sufficiency. *Kandel v. State, supra,* 252 Md. at 672, 250 A.2d at 855; *Muskus v. State,* 14 Md. App. 348, 361, 286 A.2d 783, 790 (1972). Reviewing Mr. Murphy's situation makes plain that it was not a case where there was an honest belief that no trial was scheduled, thereby leading to the failure to appear. *Cf. Sykes v. United States, supra,* 444 F.2d 928 (attorney honestly thought trial was scheduled for a week later).[11] Rather, the defendant here knew he had a scheduled trial and attempted to avoid it by last minute telephone calls to the State's Attorney and the court. His claim that he took

---

**10.** *Cf.* Giant of Maryland, Inc. v. State's Attorney for Prince George's County, *supra,* 274 Md. at 176, 334 A.2d at 117; Kandel v. State, *supra,* 252 Md. at 672, 250 A.2d at 855; Weaver v. State, *supra,* 244 Md. at 644, 224 A.2d at 687 ("It is apparent that what the appellant did [failing to appear] was contemptuous.")

**11.** Defendant's attempt to exonerate himself by stating that he acted in good faith does not negate the reasonable inference that he recklessly or wilfully failed to advise the court of his conflicting schedule. An attorney who was a mere seven minutes late for a court appearance was summarily cited for contempt in In re Hunt, 367 A.2d 155 (D.C.), *cert. denied,* 434 U.S. 817 (1977). When he appeared for the trial, he apologized and explained his tardiness; the court then found him in contempt. On appeal, the court ruled that the contempt was direct and was properly treated in summary proceedings. In addition the appellate court ruled:
> "The trial court properly inferred from appellant's actions and his explanation that he had deliberately and willfully substituted his own judgment for a direct order of the court even though his actions represented a good faith attempt to straighten out his conflicting obligation with two other courts. It was clearly within the court's discretion to treat appellant's tardiness as an act of contempt. . . ."

*Id.* at 157-58.

"reasonable steps" to keep the court informed was properly rejected by the trial court. His attempt to extricate himself by placing blame on his secretary and the congested docket of the Criminal Court of Baltimore does not diminish, in our eyes, his failure to provide seasonable and proper notice of the conflict to the court. Despite his contrary assertion in his brief, Mr. Murphy was convicted on sufficient evidence that he was guilty of reckless disregard of the dignity of the court.

*Judgment affirmed; costs to be paid by appellant.*