IN THE MATTER OF HIRSCH

Docket No. 52080. Submitted November 3, 1981, at Detroit.—Decided May 19, 1982.

Harry D. Hirsch was found guilty of contempt of court in Detroit Recorder's Court, Clarence Laster, J. The charge arose from the failure of Hirsch, an attorney, to make an appearance as ordered in Detroit Recorder's Court to represent his client, William I. Lee. Hirsch appeals claiming that his compliance with an order to appear in Macomb Circuit Court on another matter two hours after the scheduled appearance in Detroit Recorder's Court should excuse him from being held in contempt of court. *Held:*

1. Contrary to Hirsch's contention, the orders to appear at the two different trials were not conflicting. The drive between the two courthouses takes approximately 50 minutes, therefore, it was physically possible for him to appear in both courts as ordered.

2. The element of wilfulness, necessary for a contempt of court conviction, is shown by Hirsch's choice to place his own convenience above a court order. Such conduct precluded the possibility of reaching a satisfactory solution between the courts.

3. It was not error to deny Hirsch's motion to disqualify all recorder's court judges from hearing the contempt charge since there was no showing of actual prejudice.

Affirmed.

BEASLEY, J., dissented and would hold that Detroit Recorder's Court committed an abuse of discretion in finding Hirsch guilty of contempt. He feels recorder's court made an impossible demand upon Hirsch. He feels the Macomb Circuit Court action had priority and, thus, Hirsch's choice of courts in which to

REFERENCES FOR POINTS IN HEADNOTES
[1] 17 Am Jur 2d, Contempt §§ 8, 34.
[2] 17 Am Jur 2d, Contempt § 84.
[3] 17 Am Jur 2d, Contempt §§ 84, 85.
   46 Am Jur 2d, Judges §§ 174, 175.
[4] 20 Am Jur 2d, Courts § 43.

appear was technically correct. He feels it was unfair for the courts involved to fail to establish a priority when counsel told them of the conflict. He would reverse the finding of contempt.

OPINION OF THE COURT

1. CONTEMPT — COURTS.

In order for there to be a contempt of court, it must appear that there has been a wilful disregard or disobedience of the authority or orders of the court.

2. CONTEMPT — TRIAL — JUDGES — COURT RULES.

A person charged with contempt of court should be tried before a judge of the same court other than the one involved in the subject matter of the contempt or in the citation of the contemnor where circumstances necessitating immediate corrective action by the judge are not present (GCR 1963, 912.3[d]).

3. JUDGES — DISQUALIFICATION OF JUDGE.

An actual showing of prejudice is generally required before a trial judge will be disqualified and a judge's view of the law, even if strongly held, is not grounds for disqualification.

DISSENT BY BEASLEY, J.

4. COURTS — SCHEDULE CONFLICTS.

*The decision as to which court a lawyer must appear in is one properly for the courts where a lawyer is ordered to be in two coequal courts at the same time and brings his predicament to the attention of each court.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *A. George Best, II,* Assistant Prosecuting Attorney, for the people.

*E. R. Whinham,* for defendant.

Before: J. H. GILLIS, P.J., and BEASLEY and P. E. DEEGAN,* JJ.

J. H. GILLIS, P.J. Following a hearing in Detroit

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Recorder's Court, respondent was found guilty of contempt of court, MCL 600.1701; MSA 27A.1701. On June 2, 1980, respondent was sentenced to three days in jail and ordered to pay costs of $250. Respondent appeals as of right.

The contempt conviction arose out of the failure of respondent, an attorney, to appear for a criminal trial in the matter of *People v Lee* (Detroit Recorder's Court Docket No. 78-03923) in which Mr. William Ivey Lee was represented by respondent.

Respondent was scheduled to begin a civil malpractice trial in Macomb County Circuit Court on April 22, 1980. Notice of trial had been sent out on March 14, 1980. Respondent was also scheduled to appear in recorder's court for the criminal trial in *People v Lee* on April 24, 1980. Notice of this trial had been sent on February 25, 1980.

The malpractice case began as scheduled on Tuesday, April 22, 1980, and proceeded through Wednesday with the taking of proofs. On Wednesday afternoon respondent's secretary received a call from a recorder's court clerk. The clerk advised the secretary that trial in the criminal case was scheduled for the next day. The secretary confirmed receipt of the trial notice.

On Thursday, the day the criminal case was scheduled to begin, respondent's presence was not required in the civil case because the trial judge had been called to Lansing on judicial business. Respondent was, therefore, free to appear in in recorder's court on the criminal matter. Respondent did so and, at this time, informed the trial judge that he was involved in a civil suit in Macomb County.

The prosecutor suggested that the matter be adjourned. The judge, however, decided to begin as

scheduled in order to keep the recorder's court docket moving as quickly as possible. The Lee trial had already been adjourned several times. This was Lee's second trial, the first trial having resulted in a hung jury. Furthermore, one of the judges previously assigned to hear the case had disqualified himself. The present judge was a visiting judge specifically appointed by the court administrator to hear the Lee case only.

Upon the judge's decision not to adjourn the case, voir dire of the jury began. During a recess the judge attempted to contact the judge in the civil case in hopes of arriving at an arrangement satisfactory to everyone. Since the judge was not in he spoke to the clerk. After acknowledging that the civil case had priority[1] he asked that the judge in the civil case consider letting respondent appear in recorder's court for a few days to finish the criminal trial. The clerk promised to relay the message to the judge, though she noted that they were already taking proofs and the trial would likely be continued through Friday and into Monday afternoon.

The questioning of jurors in recorder's court proceeded on Thursday, April 24, through the late afternoon until a panel of jurors had been exhausted. The judge agreed to adjourn the trial

---

[1] He was apparently referring to Recorder's Court Rule 25, which states:

"Engagement of counsel will not be considered as cause for continuance, except engagements in the appellate courts, or engagement of counsel in a court of record in a case actually in progress of trial at the time.

"If counsel for any defendant is engaged in the trial of another case in this Court, in the appellate court, or in another court of record, no other case in which he has been retained will be taken up in this Court until the first case is disposed of; and, provided, that in cases in which a firm of attorneys are attorneys of record, the Presiding Judge or the Trial Judge may require some other member of the firm to try the case, if such order will not work injustice to the defendant."

until the following Monday so that respondent could appear in the civil case on Friday. Since Monday was motion day in Macomb County the temporarily assigned recorder's court judge ordered respondent to appear in recorder's court on Monday at 9 a.m. to continue jury selection in the Lee case.

Respondent participated in the civil trial in Macomb County Circuit Court on Friday, April 25. At the conclusion of the day, the judge instructed the attorneys to be in court on Monday, April 28, at 11 a.m., to go over jury instructions among themselves and arrive at a stipulation. Respondent informed the judge that he had been ordered to be in recorder's court to continue a trial there on the morning of April 28. The judge would not change his mind and ordered respondent to be in Macomb Circuit Court at 11 a.m.

Respondent attempted to contact the recorder's court judge all weekend to inform him of the situation. He finally did reach the judge at home on Sunday evening around 10 p.m. After a discussion, the judge again ordered respondent to be in recorder's court on Monday morning at 9 a.m. Respondent strongly objected to the order. The judge advised respondent that if he did not appear a mistrial would be declared and he would hold respondent in contempt of court.

Respondent did not appear in recorder's court for trial on Monday morning. Instead, he went to his office in Southfield prior to going to Macomb County Circuit Court. At about 9:20 a.m., while still at his office in Southfield, respondent received a telephone call from Alphonso Harper, counsel to recorder's court. Mr. Harper had been advised of the situation by the recorder's court judge and, with the judge's permission, called respondent at

his office and attempted to persuade him to come to recorder's court, but he was unsuccessful.

Respondent left his office in Southfield at about 10:10 a.m. and went to Macomb County Circuit Court. He arrived there at about 11 a.m. Jury instructions were discussed among the attorneys, after which, at 1:30 p.m., testimony was taken.

While respondent was so engaged, an order to show cause why he should not be punished for contempt was delivered to his office by two police officers. The order directed that he appear for a hearing on Tuesday, May 6, at 9 a.m.

After several adjournments, trial of the contempt matter began before recorder's court Judge Clarence Laster on May 19, 1980. Respondent moved to disqualify Judge Laster. The motion was based on the fact that the witnesses adverse to respondent's interests were other recorder's court judges or employees.

The motion was denied and a hearing on the denial was heard before recorder's court Judge Leonard Townsend. Respondent moved that Judge Townsend disqualify himself on the same grounds upon which he challenged Judge Laster's impartiality. Respondent stated that he would make similar motions regarding any recorder's court judge. This motion, as well as the motion to disqualify Judge Laster, was denied. The matter was then returned to Judge Laster for hearing.

At the close of proofs, Judge Laster found respondent in contempt. A sentence of three days in jail and costs of $250 were imposed on June 2, 1980.

Respondent contends that to obey one of two conflicting orders to appear for trial cannot be contempt of court because the element of wilfulness, as required for criminal contempt under

*People v Matish,* 384 Mich 568; 184 NW2d 915 (1971), cannot be shown under such circumstances. Respondent further argues that the recorder's court judge was without power to order respondent's appearance on Monday, April 28, 1980, under the rules of priority contained in RCR 25. Because respondent's factual premise is incorrect we need not address his argument on the court rules.

Contrary to respondent's contention, the orders to appear at the two different trials were not conflicting. Witnesses testified that the drive between the two courthouses is approximately 50 minutes. Thus, it was physically possible for respondent to appear in recorder's court at 9 a.m. and still be in the Macomb County courthouse at 11 a.m.

Respondent attempts to avoid this fact by stating that "nothing of significance" could be accomplished within the time constraints imposed by the two orders. We are not persuaded by respondent's personal assessment of what could have been accomplished. Moreover, we can think of several significant things that might have happened. One, a telephone conversation between the two courts might have resulted in the Macomb County judge agreeing to allow a few more hours of respondent's time to recorder's court. Or, recorder's court might have been persuaded to act otherwise. Something could have been worked out. Respondent's conduct precluded the possibility of a satisfactory arrangement. Furthermore, surely the most significant thing that would have happened if respondent had appeared at 9 a.m. as ordered is that respondent would not now be guilty of contempt for failure to appear as ordered.

We are not unsympathetic to the problems en-
countered by attorneys due to scheduling conflicts
and frequent adjournments. As respondent testi-
fied, these conflicts generally work themselves out.
However, respondent appears unwilling to ac-
knowledge that the courts have their own schedul-
ing problems and they also hope that these prob-
lems will fortuitously work themselves out. When
trials don't fall easily into place the judges must
work around them and arrange things so that the
docket moves as quickly as possible within the
acknowledged constraints caused by the inevitable
scheduling problems. Judges must be allowed this
leeway and further must have ultimate control
over these matters.

Docket problems are by no means of recent
origin. *In re McHugh,* 152 Mich 505; 116 NW 459
(1908), a case more than 70 years old, is notewor-
thy in this regard. The Supreme Court, speaking
as of May 1, 1908, said:

"About two years before these proceedings the docket
of the recorder's court became in such a condition
through delays made by attorneys on one pretext and
another that the court made a rule not to permit the
postponement of the trial of any case, particularly
murder cases, except in important emergencies and in
order to promote the administration of justice." *Id.,* 507.

The necessity for a judge's power to punish for
contempt in the context of an attorney's failure to
appear for trial was explained in *People v Matish,
supra,* 572, quoting from *Arthur v Superior Court
of Los Angeles County,* 62 Cal 2d 404; 42 Cal Rptr
441; 398 P2d 777 (1965):

" 'When an attorney fails to appear in court with his
client, particularly in a criminal matter, the wheels of

justice must temporarily grind to a halt. The client cannot be penalized, nor can the court proceed in the absence of counsel. Having allocated time for this case, the court is seldom able to substitute other matters. Thus, the entire administration of justice falters. Without judicious use of contempt power, courts will have little authority over indifferent attorneys who disrupt the judicial process through failure to appear.' "

In the case at bar, respondent could have appeared as ordered. There was no conflict between the orders of the Recorder's and Macomb County Circuit Courts. Respondent placed his own convenience above a court order and chose to be in his office at 9 a.m. on April 28 rather than in recorder's court. Under these circumstances we find the element of wilfulness has been shown.

Respondent next contends that all recorder's court judges should have been disqualified from hearing the contempt charge.

GCR 1963, 912 establishes the grounds and procedures by which a judge is to be disqualified. The mere fact that a judge who is disqualified is a member of the same court as the judge who ultimately disposes of the matter is not one of the grounds specified. In fact, subrule 912.3(d) provides that if the judge is disqualified, "another judge of the same court shall hear the case". The most that has been required without a showing of actual prejudice, in the context of contempt proceedings, is that a person accused of contempt by a trial judge must be tried before a different judge, "one not involved in the subject matter of the contempt or in the citation of the contemnor". *People v Kurz,* 35 Mich App 643, 660; 192 NW2d 594 (1971), *lv den* 387 Mich 756 (1972).

Respondent cites two cases, *Special Wayne Prosecutor v Recorder's Court Judges,* 409 Mich 1119

(1980), and *Wayne County Board of Comm'rs v
Wayne Circuit Judges,* 403 Mich 860 (1978), in
which the Supreme Court in memorandum opin-
ions disqualified all judges of the recorder's court
and the Wayne County Circuit Court, respectively.
The Court stated in both instances that such ac-
tion "is taken solely to preclude even the possibil-
ity of public concern over the impartiality of the
forum and should not be construed as a finding of
partiality or bias on the part of any of the judges
* * *". Neither memorandum opinion describes
the circumstances leading to the Supreme Court's
decision to disqualify all judges. In any event, in
those two cases judges, and not attorneys, were the
defendants.

It is well-established that an actual showing of
prejudice is generally required before a trial judge
will be disqualified. *People v Page,* 83 Mich App
412; 268 NW2d 666 (1978); *Elsasser v American
Motors Corp,* 81 Mich App 379; 265 NW2d 339
(1978). There was no showing of actual prejudice
below. Though respondent claims that a recorder's
court judge cannot fairly decide the question of
respondent's contempt where "three recorder's
court judges are of the opinion that respondent's
asserted defense cannot be a defense", a judge's
view of the law, even if strongly held, is not
grounds for disqualification. *In re Bay County
Prosecutor,* 102 Mich App 543, 548; 302 NW2d 225
(1980).

Respondent has not shown and does not even
contend that there was actual prejudice on the

part of the judge who heard the contempt case. No error occurred.

Affirmed.

P. E. DEEGAN, J., concurred.

BEASLEY, J. *(dissenting)*. I respectfully dissent. In general, I accept the recitals of fact in the majority opinion, but not the conclusions. Obviously, a lawyer cannot be in two courts at one and the same time. When a lawyer is ordered to be in two courts at the same time and brings his predicament to the attention of each, and where the courts are generally coequal in their place on the judicial ladder in Michigan's "one court of justice", the decision as to which court in which the lawyer must appear in is properly for the courts, not the lawyer. In the author's experience as a trial judge, the circuit courts in the metropolitan Detroit area practiced comity toward each other, and the court administrators and/or assignment clerks resolved conflicts between courts when lawyers were assigned to be in two courts at the same time. There is no good reason why Detroit Recorder's Court cannot similarly participate in such an arrangement.[1]

My review of this record indicates that the Detroit Recorder's Court made an impossible demand upon respondent attorney by ordering him to be in recorder's court at a time when they knew the attorney was involved in an ongoing malpractice trial in Macomb County Circuit Court. The attorney was ordered to appear in the Macomb County Circuit Court in Mt. Clemens at 11 a.m. on Monday, April 28, 1980, to go over jury instruc-

---

[1] The record does not indicate either a formal or an informal arrangement between the Macomb Circuit Court and Detroit Recorder's Court.

tions. With knowledge of counsel's Macomb County trial obligation, recorder's court ordered respondent to be in Detroit to resume jury selection in a criminal felony trial at 9 a.m. on Monday, April 28, 1980.

It is entirely obvious that if counsel went to Detroit, he was going to be required to appear in court either to continue jury selection or for some other purpose. Even if the judge commenced at 9 a.m. sharp, some period of time, for whatever proceedings were to occur, was going to elapse before respondent counsel was released to go to the Macomb County courthouse in Mt. Clemens. To suggest that somehow he would be released in time to walk to a parking lot, to get his car through Detroit traffic to the expressway, to drive to Mt. Clemens, to find a parking lot in Mt. Clemens and to walk to the Macomb County courthouse to get there by 11 a.m. is not only unreasonable, but largely impossible. Viewed charitably, the visiting judge in recorder's court should have known his order was squarely in conflict with resumption of the malpractice case in Macomb County.

I do not share the majority view that since it is "physically possible" to appear in recorder's court at 9 a.m. for a hearing of unknown duration and still be in the Macomb County courthouse at 11 a.m., respondent was in contempt of recorder's court for not appearing there.

The effect of the recorder's court order was to require respondent attorney to be in two locations at one time. Whichever choice he made was bound to be a bad one. Confronted by those two orders, he was sure to be in contempt in one court. The ongoing civil malpractice case in Mt. Clemens would seem to have had priority.

As the majority indicates, the malpractice case in Macomb County began as scheduled on Tuesday, April 22, 1980. The trial judge recessed the trial from Wednesday afternoon until Friday morning because he had been called to Lansing on judicial business. On Friday, the malpractice trial resumed and, at the end of the day, the trial judge ordered the attorneys to be in court at 11 a.m. on Monday to settle jury instructions.[2] Under these circumstances, I would hold the ongoing malpractice trial enjoyed priority.

Thus, I would believe respondent's choice of courts in which to appear was technically correct. He advised both courts of his problem. The responsibility for deciding in which court he should appear rested with the courts. It would seem that the two courts, the Macomb Circuit Court and Detroit Recorder's Court, had an obligation to communicate with each other when counsel told them of the conflict.

In any event, I would find an abuse of discretion on the part of the Detroit Recorder's Court in finding respondent guilty of contempt under the facts of this case. It was unfair to the attorney for the courts to fail to establish a priority. I would reverse the finding of contempt and award respondent his costs and attorney fees.

---

[2] Respondent attorney advised the Macomb judge he was supposed to be in recorder's court on Monday, but the Macomb judge declined to release him.