## CIRCUIT COURT OF WARREN COUNTY

Town of Front Royal

    v.

Michael J. Morrissey

### April 25, 1987

### Case No. (Law) R87000018

By JUDGE HENRY H. WHITING

This case is before the Court on an appeal from a contempt citation by the General District Court of a lawyer who failed to appear at the trial of his client, which had previously been set with his agreement some time before. The lawyer admits the non-appearance but claims his actions demonstrate that he was not guilty of a contempt of court.

The client, a Mr. Martin, had been charged on a felony warrant with operating a motor vehicle as an habitual offender and on a Town misdemeanor warrant with a third offense of operating a motor vehicle while intoxicated. The client appeared on the return date of August 19, 1986, said the defendant was his lawyer and both cases were continued to September 9, 1986, to confirm that the defendant did represent Mr. Martin. On the 9th of September, neither the defendant nor the client appeared; the defendant's office was called and his secretary advised that no retainer had been paid and that the defendant did not represent Mr. Martin. A capias was issued for Mr. Martin and a show cause order entered against the bondsman, and the matter was reset for September 23rd. The defendant called the Town Attorney, David N. Crump, Jr., on September 15th advising that there had been a mix-up in his office, that he did represent Mr. Martin, he had gotten a retainer

but he had not told his secretary, and he wanted to get Mr. Martin, who had been picked up on the capias, out of jail. Mr. Crump advised the defendant of the next return date of September 23rd, at which time Mr. Martin was brought over from the jail (the defendant apparently not appearing), and the case set on October 29th at 2:30 P.M., and the defendant was notified. On October 28th, someone from the defendant's office called Mr. Crump asking for a continuance, but he said he would not agree to any continuance without a personal telephone conference with the defendant. The defendant called Mr. Crump shortly thereafter, said he had a trial in the District of Columbia Superior Court which was to go over the next day and he wanted the case continued so as not to have a conflict. Apparently there were no convenient dates in November for the defendant but he agreed that December 9th at 2:30 P.M. was free for him and a confirming letter was sent him by Mr. Crump. Mr. Crump had no communication thereafter from the defendant. Mr. Crump said that the defendant did not appear on December 9th, that Martin did appear but he said he did not know where his attorney was, that he had paid the defendant but no longer wanted the defendant to represent him. Mr. Crump also said he had filed an ethics complaint on December 15, 1986, arising out of the defendant's conduct, sending a carbon copy to the General District Judge.

James H. Allamong, Assistant Commonwealth's Attorney, who was prosecuting Mr. Martin for operating a motor vehicle after having been declared an habitual offender, testified that there was a telephone call to his office the morning of the trial from either the defendant or some representative informing that he may be late for the trial later in the day because he was tied up in a hearing in the federal court in Baltimore but there was no telephone number left to contact the defendant to find out more about his delay and to make alternate plans. Mr. Allamong said that at the show cause hearing in the lower court the defendant testified he had contacted Edward F. Greco, a local attorney, who agreed to handle the case if he could not appear but later said during the same hearing that he was going to use Mr. Greco as "local counsel" instead of trying the case. He also said that the defendant testified that his client, Mr. Martin, had told him the morning of December 9th that he did not

want him to represent him in the General District Court, and also that the federal hearing in Baltimore took longer than he thought it would and that's why he called Mr. Greco the morning of the trial. Mr. Allamong testified that he tried to call the defendant's office a few days before the scheduled trial on December 9th to confirm the trial date but the number had been disconnected and there was no other number left with the phone company to call.

Edward F. Greco testified that he talked to the defendant on the telephone on December 8, 1986, who asked him if he would represent Mr. Martin on two misdemeanor charges, to which Mr. Greco replied in the affirmative provided he received a $500 fee in advance and the defendant arranged to have the client in Mr. Greco's office the next morning prior to the trial that afternoon. He said the defendant told him he had a potential conflict in the federal court the next day. Mr. Greco said he went over later that day to the Commonwealth's Attorney's office to see the Martin file and found that the charges were not as represented by the defendant (one of them was a felony) and he then tried to call Mr. Morrissey at the number he had left at the Commonwealth's Attorney's office but could not make contact because the operator said the telephone number was no longer in service. Mr. Greco said the next morning[1] the defendant called to see if Mr. Martin showed up in Mr. Greco's office, and Mr. Greco told him that he did not show up and that he could not represent Mr. Martin for a $500 fee when one of the cases was a felony. The defendant told Mr. Greco he was still in federal court in Baltimore and he was not sure he could make it but there was no arrangement made with Mr. Greco to attend the hearing that afternoon.

Mary Jane Yates, secretary of the Warren County Commonwealth's Attorney, testified that she had received a telephone call from the defendant a few days before trial advising he did represent Mr. Martin and asking to have the case continued for a preliminary hearing to a later date, and Mrs. Yates told him that she could not do that and that he would have to contact the Commonwealth's Attorney and the Court. The next conversation

[1] The telephone bills introduced show that Mr. Greco was not called in the morning but in the afternoon (Defendant's Exhibit 2).

she had with Mr. Morrissey was on the morning of the preliminary hearing, indicating that he was in trial on that date, December 9th, and he would not be available for the preliminary hearing.[2] She said she told Mr. Morrissey there was nothing she could do, that he should be there. She is certain there was no telephone call the preceding day. She also testified that the defendant did not say he was seeking a continuance of the Baltimore case. She believes Mr. Allamong was in court when the defendant called that morning.

Mr. Martin testified that he had paid the defendant a $250 retainer in advance and first discovered that the defendant was not going to appear on the day of his trial when he was called to the Clerk's Office in the General District Court that morning some time between 10:00 and 11:00 A.M.[3] and told by the defendant that he should go see Mr. Greco because the defendant was in another court and was not sure he would get there that afternoon but he would attempt to be there but did not say when he would come and advised him to get another lawyer, mentioning Mr. Greco's name. Mr. Martin responded that he did not think the defendant ought to bother to come anyhow since he did not think he would be a good lawyer for him, and told the defendant that he was going to get Stanley Cline, a lawyer in Fairfax, to represent him but did not tell the defendant that Mr. Cline was there or prepared to represent him that afternoon. Mr. Martin said that the defendant had contacted him by leaving messages through his employer but said that sometimes the employer's secretary would not relay the messages that were left for him. He also said he had difficulty contacting the defendant because he had to go through an answering service.

[2] I believe she was in error in her recollection of a call in the morning; the bills show it was in the afternoon.

[3] I doubt if Mr. Martin would have been waiting in the Clerk's Office between 10:00 and 11:00 in the morning for a trial scheduled for 2:30 P.M., especially when he had no appointment with his lawyer for any such meeting in the morning. The telephone bills indicate it was in the afternoon after 1:42 P.M. when the call was made.

The defendant then testified, advising that he was a trial attorney of eleven years experience and understood the pressures, demands and responsibilities of court dockets. He said that in mid-October he made an appearance as counsel for Mr. Martin and got the case continued. He said he realized Mr. Crump's insistence that the case be tried on December 9th (the date he and Mr. Crump agreed to in September) in his difficulty in getting the case continued from the October date. He confirmed that urgency in his telephone message to Mr. Greco (Town and Commonwealth's Exhibit 2), indicating that the case would not be continued from December 9th. He said that he was also representing a drug distributor in a federal Court in Baltimore, Maryland, in a case which had been set for December 8th some time before the General District Court case was set. He said that they had been in plea negotiations from mid-October and believed the case would plead out on December 8th, but when they got there on the 8th a co-defendant was holding up the plea agreement and the jury was impaneled on the 8th and the case went over until the 9th, but he still did not anticipate any trouble getting down to Front Royal on the 9th, believing that the matter would be disposed of in about an hour on the morning of the 9th, although he did call Mr. Greco on December 8th to see if he would represent Mr. Martin, warning him first that there would be no continuance of the case and of the possibility he may be delayed. He admitted that Mr. Greco never agreed to appear the next day and that he did not actually employ Mr. Greco but merely wanted to see if Mr. Greco would be available to try the case if he was not able to appear the next day. He then testified that the guilty plea proceedings were delayed the next morning because the trial judge had Alzheimer's disease and difficulty in handling the proceedings, there were also a number of recesses and the other defendant in the drug matter had a number of questions. He later amended his testimony on cross-examination and admitted that the judge who was hearing the case did not have Alzheimer's disease but that was some other judge whose name he did not give or could not remember. He said on the morning of December 9th he tried to contact the Commonwealth's Attorney, the Clerk's Office and Mr. Crump but he never could get anyone but Mrs. Yates and he did not contradict her version of the conversation.

He did, however, speak to Mr. Martin on the phone and agreed with Mr. Martin's version of the telephone conversation. He knew before he talked to Mr. Martin that he could not divest himself of the responsibility of representing Mr. Martin simply by Mr. Martin's agreement to release him, that he was required to file a motion before the Court in advance and secure the Court's permission to withdraw from the responsibilities of representation. He testified that he "couldn't remember" having told the federal judge of the Front Royal appointment or of warning the judge the day before of his potential conflict the following day in Front Royal. I find as a fact that he never told the federal judge anything about his conflict in the General District Court of Warren County. He said that there was a mid-morning recess on December 9th in the federal court in Baltimore at 10:30 and he could have called to warn the people in Front Royal that he may not be there, but he says that they were engaged in negotiations in the federal case during that recess. He never testified that he asked anyone to excuse him a few minutes during that recess to make the necessary phone calls to alert the people in Warren County of his difficulty. He produced his telephone bill on his credit card (Defendant's Exhibit 2) and it shows calls to Mr. Greco on December 8th at 3:28 P.M. and 4:12 P.M. and the following day to the General District Court at 1:47 P.M., 2:07 P.M. and 2:32 P.M., to Mr. Greco at 1:42 P.M., at 2:08 P.M., and to the Commonwealth's Attorney's office at 2:28 P.M. No phone calls were shown as having been made to Mr. Crump's office on that day although the defendant testified he thought he got his office through another number but he does not explain why it was not on his credit card billings. I find as a fact he did not try to call Mr. Crump or anyone else in Front Royal that morning because of the absence of that number on the billing and the fact that there has been no evidence produced to show through anyone in Mr. Crump's office that he did call that morning. Obviously both he and Mr. Martin are mistaken about when they had their conversation about Mr. Morrissey's either non-appearance or delayed appearance on December 9th. He could not have talked to Mr. Martin before 1:47 P.M., less than an hour before the hearing was to start at 2:30 P.M. in Warren County. He said that the Baltimore hearing was completed about 1:15 and he

could have been in Warren County by 3:15 or 3:30 P.M. if he had left immediately and driven down there.

The issue here is whether Mr. Morrisey's conduct was sufficient from which a Court could have concluded that he was guilty of contempt beyond a reasonable doubt.

The Court agrees with defense counsel's distinction between "whether Mr. Morrisey did properly withdraw from his client's case and whether his conduct was such as to constitute contempt of Court." Obviously the failure to properly withdraw from a case cannot of itself constitute criminal contempt. However, if the failure to withdraw from the case also was conduct which disclosed a reckless disregard of the attorney's professional duty to the Court, the requisite contempt may be inferred. The fatal flaw in the defendant's argument is his attempt to limit criminal contempt to "conduct or other actions, intended to hold the Court in such disrespect that the same amounted to contempt" (letter dated March 10, 1987) and "in order to be guilty of criminal contempt, a party must possess an intent to willfully disrupt and interfere with the proceeding of a Court. . . [or a] malignant intent to disrupt the Court." (Trial memorandum, page 3.)

There have been a number of cases dealing with attorneys who have failed to attend court due to conflicts in their schedules. Those cases are reflected at 13 A.L.R. 4th 122 and I quote from that annotation:

> Delinquent attorneys have offered a wide variety of excuses for their absences, which the courts have accepted or rejected depending upon the particular facts of the case. The most common explanation has been that the attorney had incurred a conflicting obligation to appear before another court, or had other pressing legal business which made it impossible to attend the proceedings as scheduled. Here, as in other circumstances, the court's decision has sometimes appeared to rest on such factors as whether the attorney had a history of such absences, whether he had notified the court of his inability to attend in time for it to make other arrangements or had provided substitute counsel who was prepared to handle the case,

or simply whether or not it believed his story. *Id.*, at 126.

In this Court's opinion, Mr. Morrissey, with full knowledge that the case could not be tried in his absence, made no effort to contact the Judge in sufficient time to re-schedule the trial or call off the witnesses, made no meaningful effort to obtain substitute counsel who could try the case and did nothing meaningful to attempt to remedy the situation when he completed his prior engagement and could have driven to Front Royal in time to try the case later that afternoon had he but called the Court and asked for a delay to permit him to make the trip from Baltimore to Front Royal. His flurry of calls beginning at 1:42 P.M., less than an hour before trial, seem to have been intended as a "smoke screen" to confuse his client, Court personnel and opposing counsel in an attempt to avoid a possible contempt citation.

The defendant contends that the following activity by him demonstrated a lack of criminal contempt.

(1) He attempts to justify his failure to appear by his client's statement on the day of the hearing that he had obtained another attorney's services and did not believe the defendant should appear. (Trial memorandum, page 2.)[4] The defendant could hardly have been surprised by his client's ire upon being called to the phone on the day of trial and being told by the attorney that he may not appear that day due to a conflicting engagement in Baltimore. This was the second time this lawyer "stood his client up." The first time the client wound up in jail when the lawyer and his secretary failed to confirm the representation or to make arrangements to have either the client or the lawyer appear on one of the earlier return dates. No lawyer could have thought that the client could produce another lawyer on less than one hour's notice) to defend him in a preliminary hearing on a felony matter, and this lawyer must have realized that if the

---

[4] His trial testimony does not go this far; what he testified was that he agreed with Mr. Martin's version of the conversation that he did not think the defendant ought to come when being told he may be late for the trial since he did not believe the defendant would be a good lawyer for him and he was going to get Stanley Cline, a lawyer in Fairfax, to represent him.

new lawyer had appeared he would have had to ask for yet another continuance of the case, which had already been continued a number of times either because of this lawyer's negligence or his conflicting trial schedule.

The contention that "when he was finally able to contact his client, he discovered that different counsel had previously been arranged. Consequently, [he] reasonably felt no further need to ask the Court to delay the proceeding for several hours until he could arrive from Baltimore" (trial brief, pages 9-10) is without merit. The record simply does not bear out this contention. He talked to his client less than an hour before the trial and he did not say that the client had counsel present, merely that the client said he was going to get another lawyer from Fairfax and that he should not come. This lawyer knew no other lawyer could try the case that day (especially one from Fairfax, who the defendant knew was not in Front Royal at that time), and the Court finds that he had no basis whatever for believing that the case would proceed without him and therefore there was no further need to contact the Court.

(2) He says he tried to contact the Clerk's Office on the morning of the hearing, as well as the Commonwealth's Attorney and the Town Attorney. No telephone bills are presented to show any such calls; on the contrary, the bills produced show that no calls were made to Front Royal until 1:47 P.M., less than an hour before the trial was to begin.

(3) He also says in his trial memorandum (page 3) that he contacted the Town Attorney of Front Royal to advise of the conflict but the evidence simply does not establish that, and neither he or Mr. Crump described any such contact at the trial before this Court.

(4) He says he contacted the secretary of the Commonwealth's Attorney and, indeed, she recollected such a conversation, which she said was in the morning but the telephone bills demonstrate to have been in the afternoon. No matter when he talked to the Commonwealth's Attorney's secretary, there is no contradiction of the fact that she told him in no uncertain terms that she could not authorize the continuance and he should be there for the trial.

(5) He makes a further attempt to justify his conduct by claiming he could not disengage himself from the proceed-

ing in the federal court in Baltimore. It seems unusual that he did not even inform the federal Judge in Baltimore of his potential conflict on the afternoon of December 9th. That was one of the elements justifying a finding of criminal contempt in *United States v. Smith*, 436 F.2d 1130 (9th Cir. 1970).

*Wise v. Commonwealth*, 97 Va. 779 (1891), in which a lawyer was found to lack criminal intent in a scheduling conflict is inapposite for the reasons which follow:

(1) When Mr. Wise found himself in a scheduling conflict between two Courts he immediately contacted the Court in which he was to be delayed through the Commonwealth's Attorney when he thought the matter would be delayed. Mr. Morrisey had no contact with this Court; his tentative negotiations with Mr. Greco and his conversations with the secretary of the Commonwealth's Attorney were not in any sense of the word an effort to contact the Court and inform it of the delay.

(2) Defendant Wise asked the other Court for a continuance to meet his obligation to the General District Court; Mr. Morrissey never mentioned the matter to the federal court, urged the federal court to speed the case along or continue it to permit him to comply with this obligation.

(3) Mr. Wise was delayed but as soon as he was released he came to the second Court. In contrast to *Wise*, Mr. Morrissey never traveled to Front royal or contacted the General District Court to explain his absence either that day or later until he had been served with a contempt citation. Paraphrasing *Wise*:

The whole tenor and spirit of his conduct, when he found himself thus embarrassed, is marked by a contempt of the jurisdiction of the General District Court and his obligation to appear for a trial which had been continued at his request and a lack of any consideration for that Court's schedule. This act[5] on his part was calculated to embarrass, hinder or obstruct the General District Court of Warren County in its administration of justice.

The cases cited by defendant do not support his position. This is not a case of forgetting an engagement,

[5] While the finding is based solely on what the defendant did or failed to do on December 9, 1986, his prior dealings with his client, the Court and opposing counsel certainly do not demonstrate any great concern for their schedules.

as in *Sykes v. United States,* 444 F.2d 928, 930 (D.C. Cir. 1971). In deciding that case the Court pointed out that the requisite intent may be "either specific or general . . . [and] may be inferred if a lawyer's conduct discloses a reckless disregard for his professional duty." *Id.,* at 930. Unlike *Matter of Stout,* 692 P.2d 545 (N. Mex. 1984), cited on page 9 of the trial memorandum, where Stout had made arrangements for substitute counsel, Mr. Morrissey's conversations with Mr. Greco could hardly have been construed as any arrangement for substitute counsel and his reliance on his alleged discharge by the client with the statement that he was going to get another lawyer is similarly deficient in "arranging for substitute counsel. *In re Furquhar,* 492 F.2d 561 (D.C. Cir. 1973), cited on the same page for the proposition that there was no requisite criminal contempt in being delayed in reporting to a second hearing where there was a conflict with another hearing, does not avail this defendant. In that case both Judges knew of the defendant's conflict, he had explained his conflict to the other Judge but the other Judge would not release him. This defendant made no explanation to the Judge in the Federal Court. Also, Furquhar went immediately back to the other Court as soon as he could. This defendant did nothing but make a few phone calls, none to the Court and none imparting definite information as to what he was going to do. *Litus v. McGregor,* 381 So. 2d 777 (Fla. Dist. Ct. App. 1980), is also distinguishable. There the attorney had requested:

> [H]is associate, Mr. Joe M. Mitchell, an attorney familiar with the case, to appear before the Court on that date. . . [he] neglected to specifically instruct Mr. Mitchell to handle the particular hearing but requested only that he take care of the matters on the criminal docket for that day. . . The worst that can be said of [his] conduct was that it reflects he was disorganized and negligent in his planning . . . . It does not reflect that he deliberately ignored this hearing with awareness and knowledge that the hearing would not be covered. *Id.* at 758-759.

In contrast, this defendant knew this hearing would not be covered and made no arrangements to see that it would be covered.

*Taylor v. District Court for Fourth Judicial District,* 434 P.2d 679 (Alaska 1967), is cited in support of the contention that there was no contempt in this case. *Taylor* is distinguishable from this case because by the defendant's own statement: "The attorney informed the clerk of the district court and opposing counsel but the Judge refused to re-schedule the trial." (Trial memorandum, page 8). Morrissey never even told the Clerk he was not going to be there, let alone the Judge.

The following are the cases noted in the *Annotation, supra,* where contempt was found because of the attorney's failure to show up for trial:

Where the attorney knew in advance that he had a conflict and failed to advise the Court until the morning of trial of that conflict, *United States v. Smith,* 436 F.2d 1130 (9th Cir. 1970), cited on page 130.

*Re Shorter,* 236 A.2d 318 (D.C. App. 1967), noted on page 132, was one in which the lawyer had a number of conflicting court engagements and did not show up at the scheduled hearing because of those conflicts but he never notified the Judge of the conflicts and had no justification for not doing so.

*In re Hunt,* 367 A.2d 155 (D.C. App. 1976), noted on page 132, where the lawyer was seven minutes late to court and his excuse was he was trying to re-schedule another case and it took longer than he thought, the Court said that his failure to notify the Court of the delay indicated that he had deliberately substituted his own judgment for a direct order of the Court although it was in a good faith effort to resolve a conflict.

A failure to notify the Judge because of a scheduling conflict making the attorney late for court was found in *In re Gratehouse,* 415 A.2d 1388 (D.C. App. 1980).

*People v. Adam,* 304 N.E.2d 711 (Ill. App. 1973), noted on page 134, where the attorney did not show up for a trial and never notified the Court that he was absent because he was involved in another trial in the same building. The argument was that his conduct had not been shown to be "willful, an essential element of the finding of contempt," but the Court said he had ample opportunity

to notify the Court of his intention if he was in the same building all during that day.

In *Murphy v. State*, 416 A.2d 748 (Md. App. 1980), noted on page 134, a defense attorney failed to appear for trial because of a conflicting trial and he claimed he called one Judge in the court system to advise he could not attend a scheduled preliminary hearing and he assumed that Judge would inform the trial Judge and that he also told his secretary to notify the trial Judge and she did not follow through. The Court rejected his explanation as an attempt to place the blame on others. The Court stated that the responsibility for seeing that notice was provided was the attorney's, not his secretary's or the prosecutor's, whom he had talked to on the day before and indicated that the continuance would be no problem. The attorney tried to rely on a previous case, which held that where an attorney simply forgot the trial and was confused on the dates and preoccupied with another case he could not be found guilty of a willful contempt since he lacked specific or general intent and had never previously failed to appear. The *Murphy* Court distinguished it on the ground that this was reckless disregard of the attorney's professional duty.

In re *Gates*, 478 F.2d 998 (D.C. Cir. 1973), where the Court found an attorney guilty of criminal contempt because of his failure to notify the Court at the time of his delay and the Court said this was sufficient "evidence of contumaceous intent to support the finding of contempt by trial judge."

The Court is always reluctant to find anyone guilty of contempt of court but it does believe that the obligation of an attorney as an officer of the court ought to be at least as binding as that of a juror or a witness who has been summoned to appear in court. Where neither of those persons can give a valid excuse for a failure to comply with the summons, Courts have been required to find them guilty of contempt, and attorneys as officers of the court should be held to a similar standard. In summary, I find the defendant guilty of criminal contempt beyond a reasonable doubt in his dealing with the General District Court of Warren County on December 9, 1986.

Counsel will promptly prepare an appropriate Order finding the defendant guilty of contempt and fixing the agreed upon fine.